# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MAUREEN DEAKIN, AND ALL
OTHERS SIMILARLY SITUATED,

      Plaintiff,

      v.                                    No. 17-CV-0773-WJ-KK

MAGELLAN HEALTH, INC.,
MAGELLAN HEALTHCARE, INC.,
MAGELLAN HEALTH SERVICES OF
      NEW MEXICO INC.,
MERIT BEHAVIORAL CORPORATION, &
MAGELLAN HSRC, INC.,

      Defendants.

## MEMORANDUM ORDER AND OPINION GRANTING PLAINTIFFS' MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS AND CONDITIONAL CERTIFICATION; ORDER FOR THE PARTIES TO CONFER ON THE PROPOSED NOTICE AND CONSENT FORM AND ORDER FOR THE PARTIES TO SUBMIT A JOINT NOTICE AND CONSENT FORM AND JOINT RESPONSE

      THIS MATTER comes before the Court upon Plaintiffs' Motion for Notice to Potential Plaintiffs and Conditional Certification (**Doc. 26, filed 10/24/17**). Having reviewed the parties' briefs and the applicable law, the Court finds that Plaintiffs' Motion is well-taken, and is, therefore, **GRANTED**. The parties are **ORDERED** to confer regarding the Proposed Notice (Docs. 26-1, 52-5, 52-6) and the Consent Form (Doc. 26-2). The parties shall submit a Joint Proposed Notice and Consent Form, and a Joint Response, described herein, within **14 DAYS** from the date of entry of this Order.

## BACKGROUND

Plaintiff Maureen Deakin ("Plaintiff") is suing Defendants to recover overtime wages that she alleges Defendants failed to pay her and other employees in accordance with federal and state law. First Amended Complaint, Doc. 32, filed 12/12/17. Plaintiff asserts two counts: Failure to Pay Wages in Accordance with the Fair Labor Standards Act (Count I) and Violation of the New Mexico Wage Law (Count II). Doc. 32. Plaintiff brings this action individually and on behalf of similarly situated employees pursuant to the Fair Labor Standards Act (FLSA), and also as a Rule 23 class action pursuant to the New Mexico Wage Law. Doc. 32, ¶¶ 5, 6. The current Motion (hereinafter "Motion for Conditional Certification") seeks an Order allowing notice to potential Plaintiffs and conditional certification pursuant to the collective action provision in the FLSA; the present Motion is not for class certification pursuant to Federal Rule of Civil Procedure 23. Doc. 26.

After Plaintiff filed the present Motion for Conditional Certification (Doc. 26), Defendants filed an Opposed Motion to Dismiss for Failure to State a Claim. Doc. 35, filed 1/9/18. Upon receiving requests from both parties for extensions in light of the Motion to Dismiss, United States Magistrate Judge Kirtan Khalsa granted Defendants' request that Defendants have thirty (30) days from the entry of the Court's Order on the Motion to Dismiss to file their response brief, if necessary, to Plaintiff's Motion for Conditional Certification (Doc. 26). Doc. 39, filed 2/5/18. On June 21, 2018, the Court denied Defendants' Motion to Dismiss (Doc. 44) and the parties resumed briefing the current Motion for Conditional Certification.[1] On

---

[1]   On August 14, 2018, the parties entered a Stipulation Regarding Equitable Tolling (Doc. 54), providing:

> To (a) avoid any potential prejudice to Potential Opt-In Plaintiffs, (b) facilitate the future distribution of notice to potential members if the FLSA collective action is conditionally certified by the Court, and (c) provide the parties with a reasonable period of time to prepare and send the Court-approved Notice of Right to Join Lawsuit, the parties hereby stipulate that the FLSA statute of limitations shall be deemed tolled as to any Potential Opt-In Plaintiff for the period from

July 23, 2018, Defendants filed their Response brief in opposition to the present Motion (Doc. 51),[2] and Plaintiff then filed her Reply brief to Defendants' Response brief (Doc. 52). Defendants then requested that this Court grant them leave to file a Surreply brief (Doc. 55) regarding the present Motion on the grounds that Plaintiff had narrowed the putative class in her Reply brief. Upon receiving the parties' briefs for Defendants' request for leave, the Court granted Defendants' request to file a Surreply (Doc. 57), which Defendants submitted on September 5, 2018. Doc. 58. The present Motion for Conditional Certification is now fully briefed.

Plaintiff seeks conditional certification and notice on the grounds that a group of other similarly situated non-exempt employees exists and that Defendants knowingly subjected such individuals to a single unlawful policy that denied payment for all overtime hours worked by providing a salary. Defendant Magellan Health, Inc. ("Magellan Health") is a managed health care company focused on behavioral health, specialty health, and integrated care management to health plans, employers, and the federal government. Doc. 51. Named Plaintiff Maureen Deakin was employed as a Care Coordinator and Behavior Health Care Coordinator by Defendants in New Mexico (Doc. 61-1; *accord* Doc. 51 at 4). Plaintiff has submitted the notices of individuals who have consented to join the lawsuit prior to receiving any Court-approved notice, and seven of those individuals have submitted declarations to support the allegation that they are in fact similarly situated to each other and to the putative class. Docs. 26-3, 26-4, 26-5, 26-6, 26-7; Doc.

---

January 9, 2018 until June 21, 2018, which was the date that the Court denied Defendants' Motion to Dismiss. Thus, the limitations for any future opt-in would be tolled by 163 days.

[2] Defendants also submitted an Opposed Motion to Compel Depositions of Plaintiff and Opt-In Plaintiffs, and Motion for Extension of Time to File Response to Plaintiff's Motion for Conditional Certification (Doc. 46, filed July 17, 2018), which Magistrate Judge Khalsa denied after finding that Defendants had failed to demonstrate good cause for long delaying their request to re-open and extend the discovery deadline. She further ruled that Defendants would be held to the deadline imposed months prior for their response brief to the present Motion. Doc. 50, filed 7/19/18.

27; Doc. 61. On September 30, 2018, named Plaintiff Maureen Deakin submitted her declaration supporting the collective action proceedings. Doc. 61-1.

## DISCUSSION

**I.     FLSA Wage Requirements**

Under the Fair Labor Standards Act, an employee may bring a collective action on behalf of "similarly situated" employees as a remedy for violation of the FLSA. 29 U.S.C. § 216(b) (providing remedy under the FLSA). The purpose of collective action is to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and to benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Unlike Federal Rule of Civil Procedure 23 class actions, putative class members under the FLSA must opt-in to the class rather than opt out. *Thiessen v. General Electric Capital Corp*., 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002); § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). To obtain consent, the parties may send notice of the opportunity to opt-in to the collective action if the court finds that members of the proposed class are sufficiently similarly situated. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" (citation omitted)).

The FLSA requires employers to pay covered employees who work longer than forty hours in a given workweek "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). As the Tenth Circuit has explained,

"[t]he purpose of FLSA overtime is to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011) (citation and quotation marks omitted).

## II.     Two-Stage Collective Action Certification

The relevant question under § 216(b) is whether the plaintiff is "similarly situated" to members of the proposed class, as opposed to satisfying the criteria under Rule 23 for class certification. *Theissen*, 267 F.3d at 1102 (explaining that Congress adopted the "similarly situated" standard instead of Rule 23 standards). Section 216(b) does not define "similarly situated," but this Court and many district courts in the Tenth Circuit apply the two-step (also called the "two-stage") ad hoc approach approved in *Theissen v. GE Capital Corp.* for determining whether the members of the proposed action satisfy § 216(b). *See Thiessen*, 267 F.3d at 1105 ("Arguably, the [two-step] ad hoc approach is the best of the three approaches outlined because it is not tied to the Rule 23 standards."); *Calvillo v. Bull Rogers, Inc.*, No. 16-cv-919-WJ-GBW, 267 F. Supp. 3d 1307 (D.N.M. 2017) (applying two-stage ad hoc approach to FLSA collective action certification); *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2010 U.S. Dist. LEXIS 144305 (D. Colo. Sep. 15, 2010) (same); *cf. In re Chipotle Mexican Grill, Inc.*, No. 17-1028, 2017 U.S. App. LEXIS 8996, at *6–7 (10th Cir. Mar. 27, 2017) ("Our ultimate holding on this issue [in *Theissen*] was limited to finding 'no error' for 'adopting the ad hoc approach'; we did not adopt this approach as mandatory within our circuit. Indeed, we noted . . . the district courts' flexibility to determine whether plaintiffs are similarly situated." (citing *Theissen*, 267 F.3d at 1102, 1105)).

Under the first stage of the ad hoc approach, prior to the completion of discovery, a court typically makes an initial "notice stage" determination of whether the plaintiffs are "similarly situated." *Theissen*, 267 F.3d at 1102–03. At this stage, a court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (citation and quotation marks omitted); *Calvillo*, 267 F. Supp. 3d at 1312 ("The record need only be 'sufficiently developed' to allow court-facilitated notice based upon 'substantial allegations or some factual support.'"). The court must determine whether the named and potential plaintiffs are "similarly situated" based on the allegations in the complaint, which may be supported by sworn statements. *See Landry v. Swire Oilfield Services, L.L.C.*, No. 16-cv-621-JB/LF, 252 F. Supp. 3d 1079, 1114–15 (D.N.M. 2017) ("A plaintiff need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." (citation and quotation marks omitted)); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("[P]laintiffs accomplish this by making some showing that there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." (quotation marks omitted)). Thus, the burden at this stage is light or lenient, but provisional certification is not automatic. *Theissen*, 267 F.3d at 1103 (referring to ad hoc standard as a "fairly lenient"). If the Court conditionally certifies the class based on these allegations, notice may be sent providing for the opportunity to opt-in and discovery may proceed on the merits. *Id.* at 1102–03.

After the opt-in period has closed, the Court then makes a second determination, usually prompted by a defendant's motion to decertify the class, utilizing a "stricter standard" of

similarly situated. *Id*. at 1102–03. Once the parties know which employees will be part of the class, the court may reevaluate the conditional certification "to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007). During the second stage of analysis, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required" before they commenced their lawsuit. *Theissen*, 267 F.3d at 1103 (quotation marks omitted).

**III. Analysis**

Plaintiffs seek conditional certification of the following class members:

> Defendants' current and former, non-supervisory employees who worked for Defendants in at least one workweek for over 40 hours in one workweek over the past three years; who received their pay on a salary basis; worked under a job title within Defendant's "care management job family" containing the terms term[sic] "Care Coordinator" or "Care Manager"; and whose job duties included Care Management Work.

Doc. 52 at 2 (defining narrowed class in Reply brief). Plaintiffs explain that, as stated in the First Amended Complaint, "Care Management Work" consists of

> communicating with and gathering data from members to document members' medical circumstances in Defendants' computer system ("Data Collection"), inputting member data into Defendants' computer system ("Data Entry"), using established guidelines to maximize utilization of plan resources through application of predetermined criteria ("Care Utilization"), providing information to members and providers regarding plan benefits and resources to address members healthcare needs ("Plan Education"), and working with members and providers to set up medical care ("Care Coordination"), and other similar work (collectively, "Care Management Work").

*Id.* at 2 n.4 (quoting Doc. 32). Plaintiffs claim that their substantial allegations and declarations "show that all Care Coordinators and Care Managers shared similar job duties and were

subjected to Overtime Misclassification Policy that paid them on a salary plus bonus basis without overtime[.]" *Id.* at 3. Plaintiffs assert that the members of the class were subjected to the Overtime Misclassification Policy "regardless of specific 'Care Coordinator' or 'Care Manager' job title assigned within Defendants' 'Care Management' job family and regardless of the region worked." *Id.* Plaintiffs allege that the non-supervisory core duties of all the job titles included in the Care Coordinator and Care Manger categories "consist of nothing more than routine, low-level administrative functions, typically performed by individuals in accordance with strict corporate guidelines, practices and routines." *Id.* at 5; *accord* Doc. 32, ¶ 23. Plaintiffs allege that the members of the class were "all bound by a common set of facts, compensation practices, and core job requirements but were misclassified as exempt[,]" and paid a salary. *Id.* at 5–6; Doc. 32, ¶¶ 29– 31. Plaintiffs submit as exhibits descriptions for job titles within the Care Manager and Care Coordinator families, and these descriptions include the educational requirements, locations, FLSA exemption status, and job responsibilities. Doc. 52-1. Plaintiffs also submit seven declarations, now including that of named Plaintiff Maureen Deakin (Doc. 61), from some of the plaintiffs who have thus far opted-in to the lawsuit, prior to any Court-approved notice. *See* Docs. 26-3 through 26-7, Doc. 27.

Defendants argue that, even after Plaintiff narrowed the collective class description in the Reply brief, the class is still overly broad for conditional certification. Doc. 58 at 2. Defendants assert that the class now includes 884 current employees across 36 job titles and 31 states, plus Washington, D.C. *Id.* Defendants concentrate on how the jobs included in the class description "differ across the nation in numerous ways, including by specialty, management group, level of responsibility over other employees, educational requirements, experience requirements, location, and unique customer contract." *Id.* (citing Doc. 58-1). They also argue that Plaintiffs'

submitted declarations "cover only three of the 36 positions currently within the new class definition, and the opt ins who signed declarations in support of Plaintiff's Motion for Conditional Certification only worked in five of the 31 states (plus Washington, D.C.) that the new class definition covers." *Id.* at 2–3. Defendants claim that the declarant opt-ins represent too small of a pool of employees to support certification of a potentially nationwide class. *Id.* at 6. Defendants argue that the "verbatim, conclusory allegations" in the declarations "fail to show how they are similar to each other, much less how they are similar to the 33 other job positions (and any former job positions)." Doc. 58 at 8.[3] Finally, Defendants claim the "declarations do not show that a single decision, policy or plan applied to all of the 884+ putative class members." *Id.* at 6.

For purposes of the instant motion, the Court's inquiry here is limited to the first step, or "notice stage" of the process, which applies a lenient test to determine whether the putative plaintiffs are similarly situated—that is, the "Plaintiff must provide some evidence to establish a colorable basis showing the putative class members are victims of a single decision, policy or plan." *Cavillo*, 267 F. Supp. 3d at 1307. The Court may consider several factors at this stage, "including whether potential class members: (i) have the same employer; (ii) are subject to the same employer practices; (iii) suffer the same method of calculation of wages owed; and (iv) allege FLSA violations based on the same conduct[.]" *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 664 (D.N.M. 2015) (Browning, J.) (citation omitted). Furthermore, "some variation in the Plaintiff's specific job duties will not destroy a similarly

---

[3] Defendants also rely on a ruling in *Maestas v. Day & Zimmerman, LLC*, in which United States District Judge Judith Herrera denied conditional certification of a class because she found a lack of evidence of unlawful pay practice. 09-cv-19-JCH, 2009 U.S. Dist. LEXIS 131364 (D.N.M. Nov. 13, 2009). After a complicated appellate history, including reversal in part and remand by the Tenth Circuit, the *Maestas* case came in front of the undersigned judge and this Court granted the Second Motion to Certify Class after reviewing the materials from the parties. 09-cv-19-WJ, 2013 U.S. Dist. LEXIS 190307 (D.N.M. Dec. 20, 2013).

situated designation at this stage of the litigation." *Landry*, 252 F. Supp. 3d at 1120. Here, Plaintiffs' First Amended Complaint (Doc. 32), Motion for Conditional Certification (Doc. 26; Doc. 52), exhibits attached to the Reply brief (Doc. 52), and seven declarations (Doc. 26; Doc. 27; Doc. 61) meet the requirements for the first stage of collective action certification because Plaintiffs have made substantial allegations that they, and individuals who share similar non-exempt job duties, were subject to the same wage policy that misclassified them as exempt and paid them on a salary basis without overtime, and Plaintiffs have offered adequate proof to support these allegations at this stage. Doc. 26 at 1–2; Doc. 32, ¶¶ 1–3; Doc. 52 at 5–8. Plaintiffs adequately allege that this policy targeted non-supervisory jobs within the care management employment family ("Care Coordinator" and "Care Manager") with non-exempt duties including data collection, data entry, care utilization, plan education, and care coordination. Doc. 52 at 2, 6–7; Doc. 32, ¶¶ 29–31. Plaintiffs allege that this policy applied regardless of geographic location and that the specific job titles within the Care Coordinator and Care Management job families were arbitrary, such that individuals within these two larger job families were all subject to the same wage policy for performing the same duties. Doc. 52 at 8.[4]

The six declarations from non-named Plaintiffs support the description of job duties in the Care Coordinator and Care Manager job families, and each states that the declarant believes that there are individuals who have been subject to the same wage policy based on observations and interactions with other employees. *See* Docs. 26-3 through 26-7; Doc. 27; Doc. 32, ¶¶ 43–44. Specifically, the declarations state:

---

[4] Plaintiff submitted a Notice of Supplemental Authorities (Doc. 59, filed 9/12/18), which Plaintiff claims support "her contention that the certification of all care coordinators and care managers is appropriate" based on the narrowed class in Plaintiff's Reply brief. Plaintiff's "authorities" were Plaintiff's Reply brief and docket entry regarding litigation in the United States District Court of the Northern District of Illinois. Defendants submitted a Response arguing that Plaintiff's Notice should be stricken because Plaintiff failed to show that the authorities were relevant or significant. Doc. 60, filed 9/13/18. This Court has not relied on the "supplemental authorities" Plaintiff submitted in Doc. 59, as such documents are not binding on this Court, and Plaintiff has not shown how they are relevant to this litigation. The Court notes there are plenty of cases in this District to look to for persuasive authority.

> I base my belief and knowledge of Defendant's policies on (1) conversations I've had with other CMEs who have talked with me about their job duties, hours of work, and how Defendant paid them during their employment; (2) training calls/webinars that I attended with CMEs from [state of declarant's employment] and other states; (3) training seminars I attended with other CMEs from across the country; and (4) observing other individuals performing the same job duties and working similar hours when I worked in a call center environment.

Docs. 26-3 through 26-7; Doc. 27; Doc. 61. Some declarations provide the names of individuals the declarant thought might be similarly situated and wish to opt-in. *See, e.g.*, Docs. 27-1; 61-1. The declarations provide the individual job titles for each declarant, which supports the position that the members of the potential class are within the "Care Coordinator" and "Care Management" job families.[5] Additionally, the declarations specify the state in which each declarant was employed by Defendants.[6] These declarations from employees in five states are sufficient to support conditional certification of a nationwide class at this stage because the evidence offered by Plaintiffs supports the allegation that the wage policy is not restricted geographically to only the five states in the employee declarations, but instead that this is a company-wide policy. *See Landry*, 252 F. Supp. 3d at 1126 ("The geographical diversity and commonality of these allegations support a reasonable inference that the same violations occurred at other [] locations nationwide. Each declarant's assertion that they are aware of [Defendant's] company-wide pay practices and that they know of other employees who experienced the same pay violations buttresses this inference."); *Hose v. Henry Indus.*, 49 F. Supp. 3d 906, 918 (D. Kan. 2014) (certifying nationwide class involving 25 facilities in 11 states

---

[5]  *See* Doc. 26-3 (declarant was Care Coordinator); Doc. 26-4 (declarant was Care Manager and Case Manager); Doc. 26-5 (declarant was Care Coordinator); Doc. 26-6 (declarant was Case Manager and Care Manager); Doc. 26-7 (declarant was Case Manager and Care Coordinator); Doc. 27-1 (declarant was Care Coordinator and Behavioral Health Care Coordinator).

[6]  *See, e.g.*, Doc. 26-3 (declarant employed in New Mexico and Texas); Doc. 26-4 (declarant employed in Georgia); Doc. 26-5 (declarant employed in Maryland); Doc. 26-6 (declarant employed in Georgia); Doc. 26-7 (declarant employed in Florida); Doc. 27-1 (declarant employed in Maryland); Doc. 61-1 (declarant employed in New Mexico).

11

based on experience of four employees in single Missouri facility because "plaintiff makes precisely such allegations of a company-wide, uniform policy, and offers just such evidence of additional workers who wish to opt-in"); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 161 (N.D.N.Y. 2008) ("Plaintiffs are not required to submit evidence implicating every office and to show how they have identical characteristics; instead, only a representative sample will suffice."). Finally, while the declarations are almost identical, this point would not support denial of conditional certification. *See Ruggles*, 591 F. Supp. 2d at 160 ("Conversely, even though Plaintiffs' Affidavits were exceptionally similar, this should not defeat their Application for conditional certification and court-approved notice." (collecting cases)).

Named Plaintiff Maureen Deakin's declaration supports her position that she is similarly situated to members of the potential collective action class for the initial notice stage. Doc. 61-1. Specifically, Ms. Deakin's declaration provides support for her assertion there are others who have "performed similar work, worked similar hours, were classified as exempt from overtime, were paid a salary, and never received overtime pay for their overtime work." Doc. 61-1. Ms. Deakin asserts this belief based on her conversations and observations of others during her course of work as a Care Coordinator at a call center in New Mexico. Doc. 61-1. Additionally, Plaintiffs' exhibits containing job descriptions show that the positions have overlapping duties that fall within the care management work as Plaintiffs have described it. Doc. 52-1. While Defendants argue about the substance of these job titles and the corresponding responsibilities, the duties and descriptions in Plaintiffs' exhibits and declarations support their substantial allegations sufficiently at this stage.

Defendants' arguments about the dissimilarity between job duties go to the second stage of certification, which uses the "stricter" standard in determining whether the opt-in members are

sufficiently similarly situated. *See Theissen*, 267 F.3d at 1103 (explaining that during the second stage of analysis, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required" before they commenced their lawsuit). At that point, Defendants may offer argument about the distinctions between the thirty-six job positions, and why differences such as the level of specialty, educational requirements, and experience matter to certification of the collective action. *See Calvillo*, 267 F. Supp. 3d at 1313 (rejecting defendants' attacks on the merits of the claim and rejecting defendants' attempts to insert argument about disparate factual and employment settings at the notice stage of certification). Therefore, while the Court has reviewed the declarations submitted by Defendants with their briefs (Doc. 51, Doc. 58), the detailed, substantive differences between the job titles are not at issue during this stage. *See, e.g.*, *Ruggles*, 591 F. Supp. at 161 ("To balance the parties' competing affidavits at this stage would require us to determine the facts, determine credibility of deponents, and resolve legal contentions, all of which we are directed to avoid. And, the fact that there may be variations within job duties does not mean that conditional certification should be denied at this preliminary stage of the litigation."). Defendants argue that the declarations do not represent the thirty-six jobs within this class, but Plaintiffs are not required to submit declarations that represent all thirty-six job titles—Plaintiffs are only required to allege a colorable basis that the potential class members were subject to a single wage policy or decision. *See Calvillo*, 267 F. Supp. 3d at 1312 ("Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."). Thus, Defendants' arguments are not properly accepted at the initial stage of certification, as the Tenth Circuit has

13

made clear that the standard is a "lenient" one and only requires "substantial allegations." *Theissen*, 267 F.3d at 1103.

## IV.     Proposed Notice and Consent Form

Plaintiff has now submitted two versions of the Proposed Notice (an original and a redline) to be sent to members of the potential class. Docs. 26-1, 52-5. Despite the lengthy period of time the parties have had to confer, and in spite of this Court's local rule D.N.M.LR-Civ. 7.1(a) requiring the parties to confer and make a good-faith request for concurrence prior to filing a motion, Defendants request that this Court allow more time for the parties to confer about the substance of the Proposed Notice. The Court will allow the parties to confer on the Proposed Form of Notice (Docs. 26-1, 52-5) and Consent Form (Doc. 26-2), but at this time the Court issues the following ruling and directives about the Proposed Notice and Consent Form:

1. Defendants' objections to the method of delivery of the Proposed Notice are **OVERRULED**. Plaintiff's request to send notice to potential plaintiffs by email and text as well as by the United States Postal Service is GRANTED. This Court has previously addressed this issue and the Court continues to find that "notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *See Calvillo*, 267 F. Supp. 3d at 1315 (granting same request and noting that "the law is on Plaintiff's side" on this issue).

2. The parties are **ORDERED** to confer on and attempt to resolve the following issues regarding the Proposed Notice and Consent Form (Docs. 26-1, 26-2, 52-5), some of which Defendant addressed as objections in their Response brief (Doc. 51):

(a) The blank spaces in the Proposed Notice, or spaces that state "TBD," including the opt-in timeframe

(b) The instances of "deceptive language" to which Defendants object

(c) Defendants' objections to the "defective" nature of the Notice

(d) The Consent Form, which Defendants failed to address previously

3. In addition, the Court suggests that the parties use this time to resolve the following issues that tend to come up regarding sending Notice to potential Plaintiffs:

(a) The amount of time Defendants have to provide employee information to counsel for Plaintiffs[7]

(b) The contents of the electronic Notice to be sent via email and text[8]

(c) The contents of the employee information Defendants shall disclose to Plaintiffs' counsel

## CONCLUSION

The allegations in the First Amended Complaint (Doc. 32), supported by the arguments and evidence in the Motion for Notice to Potential Plaintiffs and Conditional Certification (Docs. 26, 52), constitute substantial allegations that the putative class members were, as a group, the victims of a single decision, policy, or plan resulting in violations of the FLSA. For the purpose of the Plaintiffs' FLSA claim, this case properly is conditionally certified as a collective action on behalf of the following FLSA class members, as defined in Plaintiffs' Reply brief:

> Defendants' current and former, non-supervisory employees who worked for Defendants in at least one workweek for over 40 hours in one workweek over the past three years; who received their pay on a salary basis; worked under a job title within Defendant's "care management job family" containing the terms "Care

---

[7] The Court finds that three days, as Plaintiffs requested (Doc. 26), is an unreasonable timeframe in which to accomplish this task for an action this size.

[8] The Court addressed such content in the *Calvillo* case, in which the Court also approved the use of text and email notification, along with mail by the United States Postal Service.

Coordinator" or "Care Manager"; and whose job duties included Care Management Work.[9]

Doc. 52 at 2 (describing Plaintiffs' narrowed potential class). For these reasons, the Court **GRANTS** Plaintiffs' Motion for Notice to Potential Plaintiffs and Conditional Certification **(Doc. 26, filed 10/24/17)**. It is further ordered that:

1. The parties shall have **TEN (10) DAYS** from the date of entry of this Order to confer regarding the Proposed Notice and Consent Form.

2. The parties shall submit within **FOURTEEN (14) DAYS** of the date of entry of this Order a single Joint Proposed Notice and Consent Form reflecting resolution of the items identified by the Court in numeral (2) above. The parties shall indicate resolution of each of the items identified, referring to each by its respective number/letter (e.g. 2(a), 2(b)).

3. The parties shall submit within **FOURTEEN (14) DAYS** of the date of entry of this Order a single Joint Response containing the parties' positions on the items in numeral (3) addressed above, again referring to each item by its respective number/letter. Additionally, if the parties cannot reach an agreement for each objection or issue contained in numeral (2), or some other issue regarding the Proposed Notice and Consent Form, then the parties shall include their positions and why they could not reach a resolution as to these narrow issues in their single Joint Response.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] "Care Management Work" is described in Plaintiff's Amended Complaint, Doc. 32 at 2.