**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MAUREEN DEAKIN *et al.*,

    Plaintiffs,

    vs.                             Civ. No. 17-773 MIS/KK

MAGELLAN HEALTH, INC. *et al.*,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO COMPEL

THIS MATTER is before the Court on: (1) Plaintiffs' Motion to Compel Responses to Plaintiffs' First Set of Discovery (Doc. 189), filed October 13, 2021; and, (2) Defendants' Motion to Compel Responses to Defendants' Discovery Requests (Doc. 195), filed October 28, 2021. Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, the Court FINDS that both motions are well taken in part and should be GRANTED IN PART and DENIED IN PART as set forth below.

## I. Introduction

On July 27, 2017, Plaintiff Maureen Deakin filed this putative collective and class action for payment of overtime wages under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act. (Doc. 1.) The Court entered a scheduling order on October 20, 2017, setting deadlines for Plaintiff's motion for conditional certification of a FLSA collective action and for discovery on issues related to conditional certification. (Doc. 22.) On October 24, 2017, Plaintiff filed her motion for conditional certification, and on December 12, 2017, with the Court's leave, she filed a first amended complaint. (Docs. 26, 31, 32.)

On October 5, 2018, the Court conditionally certified this matter as a collective action under the FLSA on behalf of

> Defendants' current and former, non-supervisory employees who worked for Defendants in at least one workweek for over 40 hours in one workweek over the past three years; who received their pay on a salary basis; worked under a job title within Defendant's "care management job family" containing the terms "Care Coordinator" or "Care Manager"; and whose job duties included Care Management Work.

(Doc. 62 at 15-16.) Plaintiffs sent notice to potential members of the collective action on November 19, 2018. (Doc. 65.) Ultimately, about 223 Plaintiffs opted to join the case.[1] (Doc. 104 at 1.)

On October 17, 2019, with the Court's leave, Plaintiffs filed a second amended complaint, adding putative class action claims for payment of overtime wages under Maryland, Massachusetts, Missouri, New York, and Pennsylvania law, and also adding a class representative from each of these states as named Plaintiffs. (Docs. 119, 121.) Defendants answered the second amended complaint on November 7, 2019. (Doc. 122.)

At a scheduling conference on January 24, 2020, the Court and counsel agreed that the parties would take discovery regarding class certification and decertification, and would also take merits discovery at depositions and "as appropriate where there's overlap," but that there will need to be "an additional merits phase" of discovery if class certification is granted. (Doc. 146; ABQ-MJ6thFloorSouth_20200124_135325.dcr.) On January 27, 2020, the Court entered an order setting case management deadlines, including a discovery deadline and a subsequent deadline for "[p]retrial motions . . . including motions to certify/decertify class and motions for summary judgment." (Doc. 147 at 3.) The Court also set discovery limitations, pursuant to which Defendants may depose the six named Plaintiffs and up to 22 opt-in Plaintiffs of Defendants' choice, and may

---

[1] However, about a dozen of these opt-in Plaintiffs have since withdrawn from the collective action. (Docs. 110, 163, 182, 183.)

serve written discovery requests on the six named Plaintiffs and up to 60 opt-in Plaintiffs, half selected by Plaintiffs and half by Defendants. (*Id.* at 2-3.)

On February 3, 2020, the parties stipulated to the dismissal of three Defendants without prejudice, leaving two Defendants—Magellan Health, Inc. and Magellan HRSC, Inc.—in the case. (Doc. 148.) After a stay during which the parties tried but failed to negotiate a resolution of this matter, (Docs. 169, 171), the Court reset case management deadlines and later extended them twice. (Docs. 178, 191, 214.) The current phase of discovery is now set to close on June 1, 2022, and pretrial motions including motions to certify or decertify are due by July 21, 2022. (Doc. 214.)

Plaintiffs filed their motion to compel on October 13, 2021, asking the Court to compel Defendants to respond more fully to Plaintiffs' first sets of written discovery requests. (Doc. 189.) Defendants responded in opposition to the motion on October 27, 2021, and Plaintiffs replied in support of it on November 10, 2021. (Docs. 193, 201.) Defendants, in turn, filed their motion to compel on October 28, 2021, asking the Court to compel nine opt-in Plaintiffs to respond substantively to Defendants' first sets of written discovery requests. (Doc. 195.) Plaintiffs responded in opposition to the motion on November 11, 2021, and Defendants replied in support of it on November 26, 2021. (Docs. 204, 207.) The Court finds that both sides' motions are well taken in part and should be granted in part and denied in part as set forth below.

## II. <u>Analysis</u>

### A.     Applicable Legal Standards

In general, Federal Rule of Civil Procedure 26 permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

> expense of the proposed discovery outweighs its likely benefit.  Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. While "relevancy in discovery is broader than that required for admissibility at trial, the object of inquiry must have some evidentiary value" to be discoverable. *Dorato v. Smith*, 163 F. Supp. 3d 837, 865–66 (D.N.M. 2015) (quotation marks omitted).

Federal Rule of Civil Procedure 33 permits a party to serve interrogatories on any other party regarding "any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Likewise, Federal Rule of Civil Procedure 34 permits a party to serve on any other party requests to produce and permit the inspection and copying of documents, electronically stored information ("ESI"), and tangible items "within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a)(1). If the responding party elects to produce copies of the requested documents or ESI instead of permitting inspection, such production must "be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). Federal Rule of Civil Procedure 37 authorizes a party to move for an order compelling an answer or production if another party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

Courts may limit discovery in putative collective and class actions where certification issues have not yet been resolved. "Obviously, some discovery is necessary prior to a determination of class certification." *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 304 (D. Colo. 1998). However, such "discovery is subject to limitations which may be imposed by the court, and any such limitations are within the [court's] sound discretion." *Id.* at 304-05. Generally,

4

such discovery should pertain to the requirements for collective or class certification under the FLSA and/or Federal Rule of Civil Procedure 23, rather than the merits of the plaintiff's claims.[2] *Infinity Home Collection v. Coleman*, No. 17-MC-00200-MSK-MEH, 2018 WL 1733262, at *2 (D. Colo. Apr. 10, 2018); *Griffin v. Home Depot USA, Inc.*, No. 11-2366-RDR, 2013 WL 1304378, at *4 (D. Kan. Mar. 28, 2013); *Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 634 (D. Kan. 2012); *see also Soseeah v. Sentry Ins.*, No. CV 12-1091 RB/ACT, 2013 WL 11327129, at *3 (D.N.M. Nov. 4, 2013) (scope of "discovery on class certification" turns on "whether the moving party can establish the discovery is pertinent to Fed. R. Civ. P. 23 class certification requirements").

"The reason for this general rule is that responding to class-wide discovery before the plaintiff[s] ha[ve] demonstrated the requirements for class certification frequently presents an undue burden on the responding party." *Infinity Home Collection*, 2018 WL 1733262 at *2. Permissible discovery

> should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad that the discovery efforts present an undue burden to the defendant. Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification.

*Tracy*, 185 F.R.D. at 305 (quotation marks and citation omitted).

Of course, "[c]lass-wide discovery related to the merits of a class action is not categorically prohibited prior to certification." *Infinity Home Collection*, 2018 WL 1733262 at *2. "[T]he distinctions between class discovery and merits discovery are not always obvious or easily discernable[,]" *Allen*, 283 F.R.D. at 634; and, "[a] consideration of the merits, to a certain extent,

---

[2] On a motion to decertify a conditionally certified collective action under the FLSA, a court determines whether the named and opt-in plaintiffs are sufficiently "similarly situated," considering factors such as the plaintiffs' "factual and employment settings," the defendants' defenses, and "fairness and procedural considerations." *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002). Under Rule 23, in turn, "[a]ll classes must satisfy the prerequisites of Rule 23(a), which are . . . numerosity, commonality, typicality, and adequacy." *Gandy v. RWLS, LLC*, No. CV17-558 JCH/CG, 2019 WL 1407214, at *5 (D.N.M. Mar. 28, 2019).

is inextricably intertwined with the Rule 23 requirements of commonality and typicality," so certification and class-wide merits discovery will likely overlap to some degree. *Soseeah*, 2013 WL 11327129 at *3. Also, "when the burden imposed on the responding party is minimal or non-existent, the trial court may exercise its discretion to allow discovery beyond matters related to class certification." *Infinity Home Collection*, 2018 WL 1733262 at *2 (quotation marks omitted).

**B.    Plaintiffs' Motion to Compel Responses to Plaintiffs' First Set of Discovery (Doc. 189)**

*1.    Defendants shall specify a reasonable end date by which they will complete their document production.*

In their motion to compel, Plaintiffs first argue that Defendants[3] "must provide an end date to [their] rolling production under [Federal Rule of Civil Procedure] 34(b)(2)(B)." (Doc. 189 at 7.) As noted above, Rule 34(b)(2)(B) provides that a party responding to a request for production "may state that it will produce copies of documents or of [ESI] instead of permitting inspection[,]" and if it does so, must produce the requested documents or ESI "no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). The rule's Advisory Committee Notes clarify that

> production must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages the response should specify the beginning and end dates of the production.

Fed. R. Civ. P. 34(b)(2)(B), Advisory Committee Notes, 2015 amendments.

Thus, Rule 34 plainly requires Defendants to specify the end date by which they will complete their production of documents and ESI responsive to Plaintiffs' first set of requests for

---

[3] Because Plaintiffs did not attach a complete copy of their first sets of interrogatories and requests for production to their motion, the Court cannot confirm that these requests were directed to both Defendants. However, the Court presumes they were, because Plaintiffs initially address their motion to "Defendants," plural. (Doc. 189 at 1.)

production.[4] *Id.* Moreover, the end date must be within a reasonable period of time. Fed. R. Civ. P. 34(b)(2)(B). What is reasonable will of course depend on the nature and extent of the production at issue, and here, the production Defendants have promised appears to be extensive and complex. The Court therefore declines to require Defendants to complete their production with seven days, as Plaintiffs request. (Doc. 189 at 9.) Rather, the Court will direct Defendants to specify the reasonable end date by which they will complete their document production and to abide by that end date.

Nevertheless, the Court reminds both sides that Rule 26(e) requires parties to supplement their discovery responses "in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect[.]" Fed. R. Civ. P.26(e)(1)(A). And in this matter, the Court has specifically ordered that

> [t]he parties must supplement their disclosures or discovery responses pursuant to Fed. R. Civ. P. 26(e)(1) within twenty-one (21) days of learning any disclosure or response is incomplete or incorrect. After the close of discovery, parties must supplement their disclosures or discovery responses as soon as possible, but no later than three (3) days after learning of the need to supplement.

(Doc. 147 at 4.) In a document-intensive case like this one, the line between an endless rolling production on the one hand, and timely supplementation on the other, is not so easily discerned, and the parties have proposed no workable criteria for distinguishing between the two. Thus, while Defendants must make diligent, good-faith efforts to complete their document production by the reasonable end date they specify, Plaintiffs should anticipate that Defendants may locate and produce some responsive documents after this date by way of Rule 26(e) supplementation.

   2.   *Defendants need not respond to all of Plaintiffs' discovery requests with information about every putative class member.*

---

[4] The Court will deny Plaintiffs' incidental request for an advisory ruling on Defendants' obligations in responding to Plaintiffs' second set of requests for production. (*See* Doc. 189 at 9.) When Plaintiffs filed their motion to compel, Defendants had not yet responded to these requests. (*Id.*) Thus, Plaintiffs could not have known whether Defendants' responses would be deficient in a way justifying judicial intervention.

Plaintiffs next ask the Court to issue a blanket ruling requiring Defendants to respond to Plaintiffs' first sets of discovery requests with information about every putative class member, and not just the Discovery Plaintiffs.[5] (Doc. 189 at 9-11.) In making this request, Plaintiffs reference Defendants' objections to providing information about every putative class member in response to Interrogatories Nos. 1, 4-8, and 10, and Requests for Production Nos. 7-8, 11-12, 17, 19-21, 25, 27-28, and 31. (*Id.* at 10.) However, the Court notes that Plaintiffs limit their specific arguments in this regard to Interrogatory No. 6 and Request for Production No. 11, which are discussed in subsections II.B.6 and II.B.8 below. (*See generally id.*)

In assessing the propriety of Plaintiffs' blanket request for class-wide discovery, the Court remains mindful of the limited scope of discovery at this juncture. Specifically, as discussed at the scheduling conference on January 24, 2020, the Court and the parties agreed that during the current discovery phase, the parties are to "tackl[e] the class certification/decertification issue"; and, though they should also take merits discovery at depositions and "where there's overlap," there will be "an additional merits phase" if class certification is granted. (ABQ-MJ6thFloorSouth_20200124_135325.dcr; Doc. 146); *cf., e.g., Allen*, 283 F.R.D. at 634 (court directed parties to focus pre-certification discovery on named plaintiffs and class certification issues though it did not strictly limit discovery to these issues).

As previously noted, "responding to class-wide discovery before the plaintiff[s] ha[ve] demonstrated the requirements for class certification frequently presents an undue burden on the responding party." *Infinity Home Collection*, 2018 WL 1733262 at *2. This principle certainly applies here and suggests that class-wide discovery should generally be reserved for the discovery

---

[5] As used in this order, the term "Discovery Plaintiffs" means the six named Plaintiffs and the 60 opt-in Plaintiffs the parties selected to respond to written discovery from Defendants. (Doc. 147 at 2-3.)

phase that will follow final collective or class certification, if granted. The Court therefore declines to issue a blanket ruling requiring Defendants to respond to all of Plaintiffs' discovery requests with information regarding every putative class member.

Further, given Plaintiffs' failure to provide any request-specific input, the Court declines to undertake the painstaking request-specific analysis that would be required to determine whether Defendants should nevertheless respond to Interrogatories Nos. 1, 4-5, 7-8, and 10, and Requests for Production Nos. 7-8, 12, 17, 19-21, 25, 27-28, and 31, in particular, with information specific to each putative class member individually. Again, most requests seeking class-wide discovery would be facially overbroad and unduly burdensome at this stage of the litigation. If Plaintiffs believed any of the listed requests should be excepted from this general rule, it was their initial burden to explain why, and they have failed to meet that burden. *See Imel v. Forte Prod.*, No. 19-4107-JWB-ADM, 2020 WL 3545627, at *3 (D. Kan. June 30, 2020) ("The party seeking discovery bears the initial burden to establish relevance[.]"); *see also* Fed. R. Civ. P. 7(b)(1)(B) (motion must "state with particularity the grounds for seeking" a court order); D.N.M. LR-Civ. 7.1(a) ("A motion must be in writing and state with particularity the grounds and the relief sought.").[6]

Theoretically, it remains possible that Plaintiffs could properly serve a very limited number of class-wide discovery requests in this phase of the litigation. However, as previously noted, any such requests would be the exception, not the rule. Thus, unless and until the FLSA collective action and/or one or more Rule 23 classes are finally certified, Plaintiffs are directed to limit their discovery requests seeking information specific to individual putative class members to the

---

[6] In addition, even if it were inclined to do so, the Court could not competently assess the proper scope of the listed requests because it does not know whether or how Plaintiffs defined critical terms used in them, such as "Plaintiffs," "Care Management Employees," "the Relevant Time Period," and "Care Management Work." (*See* Docs. 189-11, 189-12.) Without definitions, these terms are unworkably vague:  even the seemingly obvious term "Plaintiffs" could plausibly refer to any one of at least four different groups, *i.e.*, (1) the six named Plaintiffs, (2) the 60 opt-in Discovery Plaintiffs, (3) the approximately 210 opt-in Plaintiffs, or (4) the more than 900 putative class members.

Discovery Plaintiffs, except that they may seek leave to serve a very limited number of requests pertaining to a larger group of individuals. If Plaintiffs elect to file such a motion, they should attach the proposed requests to the motion and clearly explain why they need the requested information about the larger group in this phase of the litigation.

      *3.*     *The Court will not overrule Defendants' "undue burden" objections en masse.*

Plaintiffs next ask the Court to overrule Defendants' "undue burden" objections to Interrogatories Nos. 6-8, and Requests for Production Nos. 10, 15, 21, 25, and 35 *en masse*, because (a) Defendants have not submitted "evidence to show the nature of the burden," and (b) in this case, which "involves a national collective and six state law classes[,] any reasonable discovery is likely going to be burdensome," but this "does not mean that the burden is 'undue.'" (Doc. 189 at 12-13.) As to Plaintiffs' first point, "[a] party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support." *Baylon v. Wells Fargo Bank, N.A.*, No. CV 12-52 KG/KBM, 2013 WL 12164723, at *3 (D.N.M. Nov. 20, 2013). Thus, Defendants' undue burden objections are not necessarily invalid simply because Defendants have failed to proffer evidence to support them.

As to Plaintiffs' second point, clearly a discovery request may be burdensome without being objectionable; otherwise, the word "undue" in Defendants' "undue burden" objections would be superfluous. However, except as to Interrogatory No. 6 and Request for Production No. 10, which are separately addressed below, Plaintiffs make no attempt to explain why the burden any of the listed requests impose is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Court therefore rejects Plaintiffs' sweeping invitation to overrule Defendants' undue burden objections *en masse*. Further, given Plaintiffs' failure to provide any request-specific input, the Court declines to undertake the meticulous request-specific analysis that would be required to

determine whether Interrogatories Nos. 7-8 and Requests for Production Nos. 15, 21, 25, and 35, in particular, are unduly burdensome in this phase of the litigation. *See* Fed. R. Civ. P. 7(b)(1)(B); D.N.M. LR-Civ. 7.1(a).

> 4.    *In response to Requests for Production Nos. 10, 25, 31, 34, and 35, Defendants shall describe the documents they are withholding or the scope of the production they are willing to make.*

Plaintiffs next argue that the Court should compel Defendants to state whether they are withholding documents responsive to Requests for Production Nos. 1-14, 16, 18, 20, and 22-45. (Doc. 189 at 13-14.) According to Plaintiffs, Defendants responded to these requests subject to their objections but without indicating whether they are withholding responsive documents in violation of Rule 34(b)(2)(C). (Doc. 201 at 4-5.) Defendants counter that they have either identified the categories of any documents they have withheld or sufficiently "describe[d] the scope of the production [they are] willing to make," and have thereby satisfied Rule 34(b)(2)(C)'s requirements. (Doc. 193 at 21-22 (quoting *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019)).)

As amended, Rule 34(b)(2)(C) provides that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). This provision is intended to

> end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections. The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. *An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."*

*Rowan v. Sunflower Elec. Power Corp.*, No. 15-CV-9227-JWL-TJJ, 2016 WL 3743102, at *5 (D. Kan. July 13, 2016) (emphasis in original) (quoting Fed. R. Civ. P. 34(b)(2)(C), Advisory Committee Notes, 2015 amendments). In other words, "Rule 34[(b)(2)(C)] imposes the responsibility on a responding party to state what it is withholding or describe the scope of the production it is willing to make[.]" *Michael Kors, L.L.C.*, 2019 WL 1517552 at *3.

The Court cannot determine whether Defendants' responses and objections to Requests for Production Nos. 1-5, 13-14, 23-24, and 36-45 comply with Rule 34(b)(2)(C) because Plaintiffs have failed to provide the Court with these requests and/or Defendants' complete responses and objections to them in violation of Local Civil Rule 37.1. *See* D.N.M.LR-Civ. 37.1 ("A party seeking relief pursuant to [Rule 37] must attach to the motion a copy of . . . the . . . request for production . . . and . . . the response or objection thereto."). Without reviewing the complete requests, responses, and objections, the Court cannot assess whether Defendants sufficiently described the scope of the production they are willing to make in compliance with Rule 34(b)(2)(C). Thus, the Court will not require Defendants to supplement their responses to these requests. Fed. R. Civ. P. 7(b)(1)(B); D.N.M. LR-Civ. 7.1(a).

Regarding the remaining requests, the Court notes that Plaintiffs did not, in their reply, address Defendants' argument that they have sufficiently described the scope of the documents they are willing to produce. (Doc. 201 at 4-5.) Nevertheless, the Court has reviewed Defendants' responses and objections to these requests and finds as follows. With respect to Requests for Production Nos. 6-9, 11-12, 16, 18, 20, 22, 27-28, and 32, the Court finds that Defendants have described the scope of the production they are willing to make sufficiently to facilitate an informed discussion of their objections. (Doc. 189-11 at 1-5, 8-12, 14-15, 17); *Michael Kors, L.L.C.*, 2019 WL 1517552 at *3; *Rowan*, 2016 WL 3743102 at *5.

12

With respect to Requests for Production Nos. 26, 29, and 33, Defendants objected and did not indicate they would be making any response. (Doc. 189-11 at 14-18.) And, Defendants made no objection to Request for Production No. 30. (*Id.* at 16.) Thus, the Court finds that Plaintiffs' Rule 34(b)(2)(C) argument does not apply to these requests.

Finally, the Court finds that Defendants did not sufficiently describe the scope of the production they are willing to make in response to Requests for Production Nos. 10, 25, 31, 34, and 35. In their responses to each of these requests except Request for Production No. 35, Defendants objected but then stated that they have produced or will produce "reasonably identifiable" or "reasonably identifiable and available" responsive documents, without defining these terms or describing how they did or would search for such documents.[7] (Doc. 189-11 at 3-4, 13, 16, 18); *see Michael Kors, L.L.C.*, 2019 WL 1517552 at *3 (description of scope of production a party is willing to make should "includ[e] the parameters of the search to be made (*i.e.*, custodians, sources, date ranges and search terms, or search methodology)"). And in their response to Request for Production No. 35, Defendants objected but then stated, "see documents that have been produced," listing such documents by Bates number. (*Id.* at 18-20.) However, they neither identified any categories of documents withheld nor described the *scope* of the documents they are willing to produce. (*Id.*) Because their responses to Requests for Production Nos. 10, 25, 31, 34, and 35 do not comply with Rule 34(b)(2)(C), the Court will require Defendants to supplement these responses by describing either the documents they are

---

[7] Defendants do not expressly use these terms in their response to Request for Production No. 34; however, they respond to this request by referring to their response to Request for Production No. 10, which does. (Doc. 189-11 at 3-4, 18.) The Court notes that Defendants also use the term "reasonably identifiable" in defining the scope of their production in response to Requests for Production Nos. 15, 19, and 21; however, Plaintiffs do not dispute that Defendants have sufficiently described the scope of the documents they are willing to produce in response to these requests. (Doc. 189-11 at 6, 10, 11; Doc. 201 at 4-5.)

withholding or the scope of the production they are willing to make, in sufficient detail to facilitate an informed discussion of their objections. *Rowan*, 2016 WL 3743102 at *5.

   5.      *Defendants need not provide additional information about ESI at this time.*

Plaintiffs next ask the Court to compel Defendants to provide "basic information regarding what [ESI] is in Defendant[s'] possession, custody, or control." (Doc. 189 at 14.) However, Plaintiffs fail to identify any requests in their first sets of written discovery that seek such information, or any authority that would require Defendants to provide it without a request. (*See id.*) The Court will therefore deny this portion of Plaintiffs' motion to compel. *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.") (brackets omitted).

   6.      *In response to Interrogatory No. 6, Defendants shall identify each Discovery Plaintiff's primary job duty that supports Defendants' claimed exemption defenses.*

In Interrogatory No. 6, Plaintiffs ask Defendants to

[i]dentify the specific exemption(s) from the Fair Labor Standards Act ("FLSA") and from the applicable state laws of each Rule 23 States [sic] that you contend are applicable to Plaintiffs, each job duty or activity Plaintiffs performed that you contend supports the application of each exemption, and for each allegedly exempt job duty or activity you identify, state: a. Whether any hourly employees who worked for Defendant during the Relevant Time Period performed or shared the job duty or activity identified and, if so, the name, address, and phone number of the hourly employee(s); b. The amount of time in hours and minutes, if known, Plaintiffs spent on a weekly basis for each week of employment, performing the specific duties you content [sic] support the exemption.

(Doc. 189-12 at 3-4.)

In their motion, Plaintiffs contend that Defendants' answer to this interrogatory was limited to "the exemptions [they] will be asserting for the general categories of Plaintiffs," and ask

the Court to compel Defendants to answer the interrogatory "fully." (Doc. 189 at 15.) Defendants respond that the Court should uphold their overbreadth and undue burden objections to this interrogatory because it is an improper contention interrogatory that "would have Defendants provide a detailed account of their exemption defenses—the key substantive issue in the case—as applied to more than 900 individuals." (Doc. 193 at 14.) They note that they "have already identified the specific exemptions they contend apply along with 'common' class evidence such as job descriptions, policies and practices," as well as "individual discovery for the Discovery Plaintiffs." (*Id.*) In their reply, Plaintiffs concede that Defendants' most recent answer "provides the exemptions claimed for each job title." (Doc. 201 at 8.) However, they note that the answer still "fails to identify the primary job duty of each job title." (*Id.*; *see* Doc. 189-12 at 4.) They then narrow the contested scope of the interrogatory and ask the Court to order Defendants "to identify the primary job duty of Discovery Plaintiff and Rule 23 Class Member job title[s]." (Doc. 201 at 8.)

Initially, the Court agrees with Plaintiffs that, albeit for a much more limited group of individuals as further discussed below, Defendants should identify each individual's "primary job duty" that they contend supports their exemption defenses. Contention interrogatories

> should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents. However, interrogatories may ask for the material or principal facts that support a party's contentions, and contention interrogatories that do not encompass every allegation, or a significant number of allegations, made by a party are proper.

*Velasquez v. Ion Solar, LLC*, No. CV 20-277 KWR/KK, 2020 WL 5604046, at *2 (D.N.M. Sept. 18, 2020) (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)) (quotation marks,

citation, and brackets omitted). As narrowed by Plaintiffs' reply, Interrogatory No. 6 complies with these guidelines.[8]

However, Defendants are correct that, in this phase of the litigation, requiring them to identify the primary job duty of every job title as applied to every member of the putative Plaintiff class would be overbroad and unduly burdensome. On the current record, there are more than 900 putative class members, whose duties allegedly vary within job titles and are governed by 26 different customer contracts and/or Defendants' policies and procedures.[9] In these circumstances, discovery regarding the customer contracts, policies, and procedures, in addition to individual discovery regarding the six named Plaintiffs and 60 Discovery Plaintiffs, will best provide Plaintiffs with a "fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23," without "present[ing] an undue burden to [Defendants]." *Tracy*, 185 F.R.D. at 305.

The Court does note that, according to Plaintiffs, the Discovery Plaintiffs hold or held only 18 of the 36 job titles at issue. (Doc. 189 at 11.) However, Plaintiffs chose all six named Plaintiffs and 30 of the remaining Discovery Plaintiffs. As such, they could have ensured that the Discovery Plaintiff pool included most or all of these job titles, even in the unlikely event that Defendants did not select any Discovery Plaintiffs with job titles different from those Plaintiffs selected. Nor

---

[8] As originally drafted, Interrogatory No. 6 would not comply with the guidelines for contention interrogatories described in *Velasquez*, 2020 WL 5604046 at *2, and is considerably overbroad and unduly burdensome.

[9] In this regard, the Court notes an apparent inconsistency between Defendants' representations earlier in this lawsuit and their representations in opposition to Plaintiffs' motion to compel. Specifically, in opposing Plaintiffs' request for conditional certification under the FLSA, Defendants argued that the job duties of individual class members with the same job titles differed because, *inter alia*, "26 unique customer contracts … define the scope of [putative class members'] work." (Doc. 58 at 9; Doc. 58-1 at 4.) In their response in opposition to Plaintiffs' motion to compel, however, Defendants contend that putative class members in Missouri support "over 1,300 current contracts," and that these class members "do not have access to these contracts and follow Magellan policies and procedures—rather than the contracts—in carrying out their job duties." (Doc. 193 at 20; Doc. 193-4 at 1-2.) This apparent inconsistency raises the question whether customer contracts, Defendants' policies and procedures, or both, actually dictate class members' job duties. However, it does not justify requiring Defendants to identify the primary job duty of every single putative class member at this time.

have Plaintiffs explained why they failed to diversify the pool in this way. Thus, the Court will not expand the scope of Interrogatory No. 6 beyond the Discovery Plaintiffs at this time. Rather, the Court will compel Defendants to supplement their answer to this interrogatory to identify the primary job duties that they contend support their exemption defenses, but only for the Discovery Plaintiffs.[10]

7.    *In response to Request for Production No. 10, Defendants shall produce final, complete, unredacted copies of the 26 customer contracts and Missouri policies and procedures that define the scope of putative class members' work.*

Plaintiffs next ask the Court to compel Defendants to respond more fully to Request for Production No. 10, which seeks "[a]ll contracts with health care providers, health insurance plans, or other entities for the performance of case management services (either by Defendant or by the other entity) to which Defendant was a party during the Relevant Time Period." (Doc. 189 at 16-19; Doc. 189-11 at 3.) Defendants have previously averred that "26 unique customer contracts . . . define the scope of [putative class members'] work," (Doc. 58 at 9), and these contracts are plainly discoverable pursuant to Request for Production No. 10. Indeed, Defendants tacitly concede as much, stating that they "have provided all of the current and historical contract documents that they have been able to identify and locate to date." (Doc. 193 at 19.)

Nevertheless, Plaintiffs identify three problems with Defendants' response to this request. First, they point out that Defendants have not produced all 26 customer contracts, and "many of the contracts that were provided are either incomplete, in draft form, or both." (Doc. 189 at 16-17.) The Court finds it difficult to credit that Defendants cannot promptly locate or otherwise obtain—*e.g.*, from other parties to the contracts—complete and final copies of 26 customer

---

[10] It remains possible that Plaintiffs could properly draft an interrogatory asking Defendants to identify the primary job duties of a very limited number of specific non-Discovery Plaintiffs who hold unrepresented job titles. However, Plaintiffs would need to seek leave to serve this interrogatory using the procedure discussed in Section II.B.2., *supra*.

contracts, particularly where these contracts define the scope of their employees' work. The Court will therefore compel Defendants to produce these documents in complete, final form.

Second, Plaintiffs complain that the contracts Defendants have produced are "heavily redacted, including highly relevant portions of the contracts that include details regarding Plaintiffs' scope of work." (*Id.* at 18.) Defendants counter that they have redacted only "financial and other confidential information that was unrelated [to] the services that [Defendants were] providing under the contract." (Doc. 193 at 20.) Defendants do not further explain why such redactions are necessary or appropriate in the context of this case. (*See id.*)

Like the United States District Court for the District of Colorado, this Court is of the opinion

> (1) that redaction of otherwise discoverable documents is the exception rather than the rule; (2) that ordinarily, the fact that the producing party is not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case; and (3) that the Court should not be burdened with an *in camera* inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege.

*All Plastic, Inc. v. SamDan LLC*, No. 20-CV-01318-NYW, 2021 WL 2979005, at *9 (D. Colo. Feb. 15, 2021).

The Court has entered a Protective Order in this matter that protects, *inter alia*, "[i]nformation prohibited from disclosure by statute; information that reveals trade secrets; [and,] financial information, proprietary information, or other business information that the Producing Party has maintained as confidential." (Doc. 216 at 3.) Defendants have failed to explain why such a protective order would be inadequate to preserve the confidentiality of the information they have

redacted, nor have they contended that any of the redacted information is privileged.[11] (*See generally* Doc. 193.) Thus, the Court finds such "redaction both unnecessary and potentially disruptive to the orderly resolution of the case," *All Plastic, Inc.*, 2021 WL 2979005 at *9, and will compel Defendants to produce the 26 customer contracts at issue without redactions.

Finally, Plaintiffs point out that Defendants have produced no customer contracts for Missouri. (Doc. 189 at 17.) Defendants respond that "[a]s to the customer contracts for Missouri, it is unreasonably burdensome and disproportionate to the needs of the case for Defendants to produce the over 1,300 current contracts related to this business line (Center of Excellence)." (Doc. 193 at 20.) Defendants further suggest that Plaintiffs do not need these contracts, because putative class members working in Missouri "do not have access to these contracts and follow Magellan policies and procedures – rather than the contracts – in carrying out their job duties." (*Id.* (citing Doc. 193-4 at 2).)

In light of Defendants' argument and evidence, the Court finds that requiring Defendants to produce more than 1,300 customer contracts for Missouri would be disproportionate to the needs of the case, because the burden and expense of producing these contracts would outweigh their likely benefit. Fed. R. Civ. P. 26(b)(1). This ruling, however, depends in part on the accuracy of Defendants' current position that their policies and procedures, rather than customer contracts, govern the scope of putative Missouri class members' work. Notably, this position appears to be inconsistent with Defendants' earlier representations. (*See, e.g.,* Doc. 51 at 4; Doc. 58 at 9; Doc. 58-1 at 4.) Thus, the Court cautions Defendants that, should they later abandon their current position or rely on evidence that contradicts it, the Court may revisit its ruling and/or impose

---

[11] Defendants filed their response to Plaintiffs' motion to compel before the Court actually entered the parties' stipulated Protective Order. (Docs. 193, 216.) However, the parties had already filed a joint motion for entry of such an order before Defendants filed their response. (Doc. 181.)

sanctions. The Court's present ruling is also dependent on Defendants' producing the policies and procedures that govern the scope of putative Missouri class members' work, and the Court will compel Defendants to produce these documents to the extent they have not already done so.[12]

8.   *Defendants need not supplement their response to Request for Production No. 11, except to identify and briefly explain any missing phone logs.*

Plaintiffs next ask the Court to compel Defendants to respond more fully to Request for Production No. 11, which seeks

> [a]ll documents and records in electronic, delimited, and importable format that reflect the times Plaintiffs performed work-related activities during the Relevant Time Period, including but not limited to, computer sign-in data, case management system data, facsimile logs, telephone logs and reports, time-stamped entries or documents, email meta data, time studies, security logs, invoices, expense reports, bills, work schedules, or other documents.

(Doc. 189 at 19-21; Doc. 189-11 at 4.)

Defendants objected to this request on the grounds of irrelevance, disproportionality, overbreadth, and undue burden. (Doc. 189-11 at 4-5.) Nevertheless, they claim that they have produced or will produce the Discovery Plaintiffs' "available phone log reports" and e-mails, as well as "data entries of the dates and times" these Plaintiffs entered case notes into Defendants' systems. (Doc. 193 at 15-16.) In reply, Plaintiffs maintain that Defendants should "produce time-stamped documents as well as any other documents responsive to this request Defendant[s] ha[ve] failed to produce to date." (Doc. 201 at 10.) The parties appear to agree that actual "time records" for putative class members "do not exist." (Doc. 193 at 15.)

The Court finds that production of the Discovery Plaintiffs' phone logs and e-mails, as well as data entries for the dates and times these Plaintiffs entered case notes, is sufficient to provide

---

[12] Although Request for Production No. 10 seeks customer contracts and not policies and procedures, Plaintiffs were justified in not seeking policies and procedures defining the scope of putative class members' work in reliance on Defendants' prior representations that customer contracts alone performed this function.

Plaintiffs with "a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad that the discovery efforts present an undue burden to [Defendants]." *Tracy*, 185 F.R.D. at 305. It would be facially disproportionate to the needs of the case to require Defendants to produce *every* document "that reflect[s] the times Plaintiffs performed work-related activities during the Relevant Time Period," (Doc. 189-11 at 4), however incidentally, even if limited to the Discovery Plaintiffs. And at this stage of the litigation, it would also be disproportionate to the needs of the case to require Defendants to produce phone logs, e-mails, and dates and times of case note entries for more than 900 putative class members. *Infinity Home Collection*, 2018 WL 1733262 at *2. If expanded in either of these ways, the burden and expense of responding to Request for Production No. 11 would outweigh the likely benefit. Fed. R. Civ. P. 26(b)(1).

Plaintiffs further contend that Defendants have not produced phone logs for many of the Discovery Plaintiffs, and that some of the logs produced are "incomplete." (Doc. 189 at 20.) In response, Defendants point out that phone logs are only available for "'phone based' Care Managers," and that they are still in the process of locating responsive documents for recently designated Discovery Plaintiffs. (Doc. 193 at 15.) In reply, Plaintiffs ask the Court to require Defendants to either provide a complete set of phone logs for the Discovery Plaintiffs or "state which phone logs are missing . . . and provide a brief explanation as to why they are not available." (Doc. 201 at 11.) The Court agrees that, to the extent Defendants are unable to produce a complete set of phone logs for each Discovery Plaintiff, they should briefly explain which logs are missing and why. In all other respects, Defendants need not respond to Request for Production No. 11 more fully than they have already indicated they are willing to do.

      9.    *Defendants shall respond to Request for Production No. 26 as narrowed by Plaintiffs' reply.*

In their Request for Production No. 26, Plaintiffs seek

[a]ll documents relating to any licenses, accreditations, or certifications held by Defendant at any time during the Relevant Time Period that related to Care Management Employees and/or their responsibilities. This includes, but is not limited to, license, accreditation, and/or certification by the National Committee for Quality Assurance ("NCQA") or the Utilization Review Accreditation Commission ("URAC"), and any communications, marketing/informational materials, applications, audits, assessments, reviews, standards, policies or procedures submitted to these or other such entities during the Relevant Time Period.

(Doc. 189-11 at 14.) In response, Defendants objected that this request "is overbroad, unduly burdensome, and seeks information that is not relevant to either party's claims or defenses in this action nor [sic] proportional to the needs of the case[.]" (*Id.*)

Plaintiffs argue that the requested documents

are directly relevant to this lawsuit because they provide the baseline functions for the services Plaintiffs provided, as well as the minimum educational and/or licensure requirements to perform those duties (which bears directly on Defendant[s'] asserted defense under the professional exemption).

(Doc. 189 at 22.) In response to this argument, Defendants no longer dispute that the requested documents are relevant, but maintain that the request is overbroad, unduly burdensome, and disproportionate to the needs of the case. (Doc. 193 at 17.) Specifically, Defendants claim that producing the requested documents would be cumulative because they have already provided Plaintiffs with more pertinent information by less burdensome means, *i.e.*, by producing certain "internal policies and standards." (*Id.* at 17-18.) According to Defendants, putative class members are not provided with "direct access" to NCQA and URAC accreditation standards; rather, they are provided with Defendants' internal policies, which are "written to comply with" such standards and which Defendants have produced. (*Id.*)

In reply, Plaintiffs first point out that Defendants, in their answer to Interrogatory No. 8, attested that some Discovery Plaintiffs "did not use medical necessity criteria at all, but may have

used guidelines from the [NCQA] if required by contract." (Doc. 201 at 11; Doc. 189-12 at 7.) This certainly suggests that some putative class members directly consulted some NCQA standards in performing their job duties, notwithstanding Defendants' contrary position. The Court will therefore compel Defendants to produce responsive NCQA and URAC standards that any of the Discovery Plaintiffs were required by contract to directly consult in performing their duties. The Court will also compel Defendants to produce any responsive NCQA and URAC standards that dictated the Discovery Plaintiffs' minimum licensure or education, unless Defendants' internal policies incorporated these standards.[13]

Plaintiffs also contend that, assuming Defendants' internal policies are written to comply with NCQA and/or URAC accreditation standards and it is less burdensome for Defendants to respond to Request for Production No. 26 by producing their internal policies, then the Court should compel Defendants to list all of the internal policies that incorporate responsive NCQA and/or URAC accreditation standards. (Doc. 201 at 11-12.)  In this regard, Plaintiffs observe that, to date, Defendants have provided only "examples of such internal policies." (*Id.* at 11; *see* Doc. 193 at 17-18.) Plaintiffs also ask the Court to compel Defendants to produce the applicable internal policies to the extent they have not already done so. (Doc. 201 at 11-12 & n.47.)

As narrowed by Plaintiffs' reply, the Court finds that Request for Production No. 26 seeks information that is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Court will therefore compel Defendants to produce any internal policies incorporating NCQA and/or URAC accreditation standards responsive to Request for Production No. 26 that they have not yet produced. In addition, the Court will require Defendants to provide Plaintiffs with a

---

[13] At this stage of the litigation and with respect to these aspects of Request for Production No. 26, the Court finds that limiting Defendants' response to the Discovery Plaintiffs will best provide Plaintiffs with a "fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23" without "present[ing] an undue burden to [Defendants]." *Tracy*, 185 F.R.D. at 305.

comprehensive list identifying which internal policies are being produced in response to the request.

10.     *Defendants need not respond to Request for Production No. 29.*

Plaintiffs next ask the Court to compel Defendants to respond to Request for Production No. 29, which seeks "[a]ll documents concerning performance reviews and evaluations of all employees who had any responsibility for managing and supervising Plaintiffs or any Care Management Employees that worked in the Rule 23 States during the Relevant Time Period." (Doc. 189 at 22-23; Doc. 189-11 at 15.) Defendants objected that this request is overbroad, unduly burdensome, and seeks information that is irrelevant, disproportionate, and invasive of non-parties' privacy. (Doc. 189-11 at 15-16.) Defendants made no response to the request. (*Id.*)

Plaintiffs argue that documents responsive to this request are relevant and proportional to the needs of the case because they will "likely" include information about how Plaintiffs' supervisors "handled complaints regarding overtime and compensation by Plaintiffs, as well as the supervisors' and managers' qualifications to supervise Plaintiffs," which "directly ties into the administrative and professional exemption defenses that Defendant[s] ha[ve] raised." (Doc. 189 at 23.) Defendants counter that "Plaintiffs do not explain why they think it is likely performance reviews would contain such information," and, "to the extent those topics are relevant, Defendants have provided the manager job descriptions, which identify minimum qualifications, and have produced copies of the reasonably identifiable compensation-related complaints made by Discovery Plaintiffs." (Doc. 193 at 19.)

The Court finds that Request for Production No. 29 is facially overbroad, unduly burdensome, and disproportionate to the needs of the case, because it seeks voluminous documents that are, at best, tenuously related to the issues before the Court at this stage of the litigation. In

particular, the Court disagrees that putative class members' supervisors' evaluations would "almost certainly" include substantive information about "the level of direct oversight [putative class members] were subjected to" or their compensation-related complaints. (Doc. 201 at 12.) It is much more likely that such evaluations would focus on how well supervisors did their jobs. If the evaluations included any information at all on the level of oversight to which putative class members were subject or their compensation-related complaints, the information would most likely be incidental. In addition, Defendants' production of the Discovery Plaintiffs' compensation-related complaints and supervisors' job descriptions will provide Plaintiffs with much more direct access to this kind of information.[14] The Court will therefore sustain Defendants' objections and deny Plaintiffs' request for an order compelling Defendants to respond to Request for Production No. 29.

11. *The Court declines to apportion the parties' expenses associated with Plaintiffs' motion.*

Finally, because the Court will grant Plaintiffs' motion in part and deny it in part and both sides' positions were substantially justified in part, the Court declines to apportion the reasonable expenses the parties incurred in relation to the motion. *See* Fed. R. Civ. P. 37(a)(5)(C) ("If [a motion to compel] is granted in part and denied in part, the court . . . *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.") (emphasis added).

**C.     Defendants' Motion to Compel Responses to Defendants' Discovery Requests (Doc. 195)**

---

[14] Plaintiffs have not specifically challenged the adequacy of Defendants' production of putative class members' compensation-related complaints or supervisors' job descriptions, and the Court does not address that issue here.

Defendants in their motion to compel assert that nine Discovery Plaintiffs objected but did not substantively respond to Defendants' first sets of written discovery requests.[15] (*See generally* Doc. 195.) In their response to the motion, Plaintiffs do not deny that these Plaintiffs failed to substantively respond, nor do they rely on any objections to justify the failure or contend that the deadline to respond had not yet expired. (*See generally* Doc. 204.) Instead, they simply observe that since Defendants filed their motion, two of the nine Discovery Plaintiffs have substantively responded to Defendants' interrogatories and requests for production[16]; three have substantively responded to Defendants' requests for production but not their interrogatories[17]; and, Plaintiffs' counsel have been unable to obtain substantive responses from the remaining four but continue to try to do so.[18] (*See id.*)

As Plaintiffs tacitly concede, Defendants are plainly entitled to substantive responses to their interrogatories and requests for production. *See generally* Fed. R. Civ. P. 26, 33, 34, 37. Moreover, Defendants are not obliged to wait indefinitely while Plaintiffs' counsel tries to obtain responses from their clients. Thus, the Court will grant Defendants' motion and require Plaintiffs

---

[15] According to Defendants, the Discovery Plaintiffs who failed to respond are Randall Bemer, Carolina Gutierrez, Susan Luscomb, Diana Meier, Lisa Messinger, Phyllis Padilla, Katherine Potts, Patrick Shanahan, and David Watts. (Doc. 195 at 1.) Plaintiffs refer to Mr. Bemer as Mr. Berner. (*See generally* Doc. 204.)

[16] Specifically, Plaintiffs contend that Ms. Gutierrez and Ms. Padilla have since substantively responded to Defendants' interrogatories and requests for production. (Doc. 204 at 2.)

[17] Specifically, Plaintiffs contend that Ms. Meier, Ms. Potts, and Mr. Shanahan have since substantively responded to Defendants' requests for production but not their interrogatories. (Doc. 204 at 3.)

[18] The four Discovery Plaintiffs who admittedly had not substantively responded to Defendants' discovery requests by the time Plaintiffs responded to Defendants' motion are Mr. Bemer, Ms. Luscomb, Ms. Messinger, and Mr. Watts. (Doc. 204 at 3-4.)

to provide Defendants with the missing substantive discovery responses within 21 days of entry of this Order.[19]

The thornier issue Defendants' motion presents is whether the Court should award Defendants the reasonable expenses they incurred in bringing the motion. Under Rule 37(a)(5), if a motion to compel is granted, or if the "requested discovery is provided after the motion was filed," then the Court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the Court

> must not order this payment if:  (i) the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

*Id.* Relatedly, Rule 37(a)(1) requires a motion to compel to include "certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

Plaintiffs contend that Defendants are not entitled to an award of expenses under Rule 37(a)(5) because they failed to make a reasonable effort to obtain the responses at issue without Court intervention. (Doc. 204 at 5-6.) Specifically, Plaintiffs note that the only attempt at informal resolution Defendants made was a letter defense counsel sent to Plaintiffs' counsel on October 25, 2021, requesting that Plaintiffs provide complete substantive responses by 5:00 p.m. on October 27, 2021. (*Id.* at 2, 5-6.) Plaintiffs' counsel did not respond to the letter—which addressed three

---

[19] The missing responses are Ms. Meier's, Ms. Potts', and Mr. Shanahan's answers to interrogatories, and Mr. Bemer's, Ms. Luscomb's, Ms. Messinger's, and Mr. Watts' answers to interrogatories and responses to requests for production. (Doc. 207 at 4.)

other discovery disputes as well—by the close of business on October 27, 2021, and Defendants filed their motion the following day. (Doc. 195; Doc. 195-1 at 36-38.)

In their reply, Defendants counter that their counsel's deficiency letter satisfied Rule 37's requirements because their motion to compel was due by October 28, 2021, and the letter merely asked Plaintiffs' counsel to "confirm whether [they] will be providing complete responses and curing the deficiencies" identified in the letter by the close of business on October 27, 2021. (Doc. 207 at 2-3.) According to Defendants,

> had Plaintiffs' counsel responded to Defendants' October 25 meet and confer letter and stated that these individuals were unreachable and that they needed additional time, Defendants would have been more than willing to jointly seek leave from this Court to extend their motion to compel deadline to hopefully avoid unnecessarily expending this Court's time and resources.

(*Id.* at 3.)

"Whether the parties engaged in a good-faith conference" under Rule 37 "will involve a case-by-case consideration of the facts[.]" *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 723 (D.N.M. 2017). However, Rule 37 "generally demands something more than a one-sided, perfunctory letter sent the day before a motion to compel is filed." *Id.*; *see also, e.g., Payless Shoesource Worldwide, Inc. v. Target Corp.*, 237 F.R.D. 666, 670 (D. Kan. 2006) (under Rule 37, "[a] 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party"); *Williams v. Bd. of Cty. Comm'rs of Unified Gov't of Wyandotte Cty. & Kansas City, Kan.*, 192 F.R.D. 698, 700 (D. Kan. 2000) ("A single letter between counsel which addresses the discovery dispute . . . does not satisfy the duty to confer."). "Letters may be a good start or part of the process, but ultimately, there must be some simultaneous, or sufficiently detailed, comparison of views." *Benavidez*, 319 F.R.D. at 724. Moreover, such letters must leave "at least enough time to have a conference that might resolve the matter." *Id.*

To determine whether Defendants complied with their Rule 37 obligation to confer, the Court must first reconcile the parties' discordant descriptions of defense counsel's deficiency letter. As Defendants contend, on the first page of this letter defense counsel did observe that Defendants' deadline to file a motion to compel was October 28, 2021, and did merely ask Plaintiffs to "please confirm whether you will be providing complete responses and curing the deficiencies set forth below by no later than 5:00pm on October 27, 2021." (Doc. 195-1 at 36 (emphasis omitted).) However, as Plaintiffs observe, on the next page counsel concluded the section addressing the missing discovery responses at issue by stating, "[p]lease provide compete [sic] responses for these Plaintiffs no later than 5:00pm on October 27, 2021."[20] (*Id.* at 37.)

Thus, notwithstanding Defendants' arguments to the contrary, defense counsel's October 25, 2021 letter set a two-day deadline for the nine Discovery Plaintiffs at issue to provide complete, substantive responses to Defendants' discovery requests. Moreover, it did not invite negotiation or suggest the possibility of a compromise on this point, unless the last sentence in the letter—"[i]f there is anything addressed herein that you would like to discuss, please contact me," (Doc. 195-1 at 37)—were to be generously construed as such. Plaintiffs' counsel's failure to contact defense counsel by October 27, 2021, either to confer or to suggest an extension of time for Defendants' motion to compel, was also less than ideal. Nevertheless, given the short deadline it imposed and its peremptory language, defense counsel's deficiency letter did not satisfy Defendants' obligation

---

[20] Defense counsel's letter is not entirely clear regarding who "these Plaintiffs" are. (Doc. 195-1 at 36-37.) This section of the letter discusses a total of 15 Discovery Plaintiffs, including (1) the nine Discovery Plaintiffs at issue here, (2) four other Discovery Plaintiffs who allegedly failed to serve substantive responses in the same time frame, and (3) two Discovery Plaintiffs apparently identified in an earlier deficiency letter who "still" had not provided responses. (*Id.*) "[T]hese Plaintiffs" could plausibly be read to refer to all 15 Discovery Plaintiffs discussed in the section; alternatively, it could be read to refer to the five Discovery Plaintiffs discussed in the last paragraph (including three of the Discovery Plaintiffs at issue here), or solely to the two Discovery Plaintiffs referenced in the penultimate sentence of that paragraph (*i.e.*, the two who "still" had not provided responses). Defendants, whose counsel wrote the letter and who are now seeking sanctions, must bear the brunt of this ambiguity. The Court therefore construes the phrase "these Plaintiffs" to refer to all 15 Discovery Plaintiffs discussed in this section of Defendants' deficiency letter, including the nine Discovery Plaintiffs at issue here.

to confer with Plaintiffs before filing their motion to compel. The Court will therefore deny Defendants' request for an award of expenses under Rule 37 at this time. Fed. R. Civ. P. 37(a)(5)(A).

The Court advises Plaintiffs that if they fail to timely submit the discovery responses compelled herein, the Court may impose sanctions up to and including dismissal of any opt-in Discovery Plaintiffs who persist in failing to participate in discovery. More broadly, the Court reminds counsel for both sides that they

> are required to comply with the Local Civil Rules of the United States District Court for the District of New Mexico, as well as the Federal Rules of Civil Procedure. Civility and professionalism are required of counsel throughout this litigation. Counsel *must* comply with the State Bar of New Mexico's "Creed of Professionalism."

(Doc. 120 at 1; Doc. 143 at 3.) Cases of this complexity and duration demand rigorous compliance with these rules and standards. The Court expects counsel to engage with one another and with the Court in meticulous good faith at all times, and cautions counsel that it will impose sanctions pursuant to its inherent authority, the Federal Rules of Civil Procedure, or both, if the Court deems it necessary and appropriate to ensure counsel's unflagging compliance with their legal, ethical, and professional obligations.

### III.  Conclusion

IT IS THEREFORE ORDERED as follows:

1.    Plaintiffs' Motion to Compel Responses to Plaintiffs' First Set of Discovery (Doc. 189) is GRANTED IN PART and DENIED IN PART as follows:

    a.    The motion is granted in the following respects:

        (1)    By **February 8, 2022**, Defendants shall specify the reasonable end date by which they will complete their production of documents

responsive to Plaintiffs' first set of requests for production, and shall abide by this end date except as otherwise ordered below;

(2)   By **February 22, 2022**, Defendants shall supplement their responses to Requests for Production Nos. 10, 25, 31, 34, and 35 by describing the documents they have withheld or the scope of the production they are willing to make, in sufficient detail to facilitate an informed discussion of their objections;

(3)   By **February 22, 2022**, Defendants shall supplement their answer to Interrogatory No. 6 to identify each Discovery Plaintiff's primary job duty that Defendants contend supports their claimed exemption defenses;

(4)   By the reasonable end date identified pursuant to subparagraph (1), *supra*, and in response to Request for Production No. 10, Defendants shall produce complete, final, unredacted copies of the 26 unique customer contracts and Missouri policies and procedures that define the scope of putative Plaintiff class members' work;

(5)   By the reasonable end date identified pursuant to subparagraph (1), *supra*, and to the extent Defendants are unable to produce a complete set of phone logs for each Discovery Plaintiff in response to Request for Production No. 11, they shall briefly explain which logs are missing and why;

(6)   By the reasonable end date identified pursuant to subparagraph (1), *supra*, and in response to Request for Production No. 26, Defendants

shall produce responsive NCQA and URAC accreditation standards that any of the Discovery Plaintiffs were required by contract to directly consult in performing their job duties, and also any responsive NCQA and URAC accreditation standards that dictated any Discovery Plaintiffs' minimum licensure or education unless Defendants' internal policies incorporated these requirements;

(7)     By the reasonable end date identified pursuant to subparagraph (1), *supra*, Defendants shall also produce their internal policies incorporating NCQA and/or URAC accreditation standards responsive to Request for Production No. 26, along with a comprehensive list identifying which internal policies are being produced in response to the request; and,

b.     In all other respects, the motion is denied. Further, unless and until a FLSA collective action and/or one or more Rule 23 classes are finally certified, Plaintiffs shall limit their discovery requests seeking information specific to individual putative class members to the Discovery Plaintiffs, except that they may move for leave to serve a very limited number of requests pertaining to a larger (or different) group of individuals; and,

2.     Defendants' Motion to Compel Responses to Defendants' Discovery Requests (Doc. 195) is GRANTED IN PART and DENIED IN PART as follows:

a.     The motion is granted in that

(1)     opt-in Discovery Plaintiffs Bemer, Luscomb, Messinger, and Watts shall respond substantively to Defendants' first sets of

interrogatories and requests for production no later than **February 22, 2022**; and,

(2)     opt-in Discovery Plaintiffs Meier, Potts, and Shanahan shall substantively answer Defendants' first sets of interrogatories no later than **February 22, 2022**; and,

b.     The motion is denied in that, at this time, the Court will not award Defendants the reasonable expenses they incurred in bringing the motion.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE