IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MAUREEN DEAKIN,<br><br>        Plaintiff,<br>v.<br><br>MAGELLAN HEALTH, INC., et al.<br><br>        Defendants. | Civil Action<br>No. 1:17-cv-00773-MLG-KK |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Maureen Deakin and those similarly situated ("Plaintiffs") move this Court to preliminarily approve the class and collective action settlement in this matter. In support of this motion, Plaintiffs assert as follows:

I.    **INTRODUCTION**

Plaintiffs seek preliminary approval of the Settlement Agreement attached as **Exhibit A** (the "**Settlement Agreement**" or "**Agreement**"). Under the terms of the Agreement, Defendant Magellan Health Care, Inc., et al. ("**Defendant**" or "**Magellan**") will pay $16,000,000 (plus the employer's portion of applicable payroll taxes) to resolve the claims of approximately 200 individuals who worked for Defendant between October 1, 2013, and August 10, 2024. The Named Plaintiff, Opt-In Plaintiffs, putative class members[1], and the certified class members (collectively, "**Class Members**" or **"Settlement Class"**) litigated their claims for unpaid overtime

---

[1] During preparation for mediation with Magistrate Khalsa, the parties identified six individuals from the earliest time period covered by the case, who had been omitted from the formal class list from which class certification notices were sent ("**Supplemental Class Members**"). To put these individuals on equal footing with the remainder of the certified class members, the Parties agreed to send those individuals notices explaining their rights to be excluded from the class as well as to object to the settlement. The individuals who were previously sent notices have already been given the opportunity to exclude themselves from the case and, therefore, the notice to these individuals is limited to objecting to the settlement.

wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("**FLSA**"), and the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19, *et seq.* ("**NMMWA**" or "**State Wage Law**").

After almost eight years of litigating this case, which was interrupted by a multi-year break due to COVID-19 and three mediations, the Parties were able to resolve this matter on May 13, 2025, with the assistance of Magistrate Judge Khalsa. The Court should preliminarily approve the Settlement Agreement in this case. The proposed Settlement Agreement is "fair, reasonable and adequate," provides Class Members with substantial monetary relief, and satisfies all other criteria for preliminary approval. Plaintiffs request the Court enter an Order, in the form attached hereto as **Exhibit B**, that: (1) grants preliminary approval of the proposed Settlement Agreement; (2) approves the proposed Notices attached as **Exhibit C** (Class Members other than Supplemental Class Members) and **Exhibit D** (for Supplemental Class Members) and directs implementation of the notice program as set forth in the Settlement Agreement; (3) appoints the Settlement Administrator; (4) sets the deadline for Class Members to object to the settlement (and for Supplemental Class Members to opt out of the Class); (5) sets the date for the Final Approval Hearing; and (6) permits the parties to take all steps necessary to implement the Settlement Agreement once final approval is granted.

## II.    FACTUAL BACKGROUND AND COURSE OF THE LITIGATION

Maureen Deakin filed this action on July 27, 2017. ECF 1. She filed the lawsuit to recover alleged unpaid overtime wages under both federal and New Mexico state law. *Id.* The case was filed as a collective action under the FLSA and as a Rule 23 class action for the NMMWA claims.[2]

---

[2] The case originally covered federal and state law claims of individuals in states other than New Mexico and positions other than Care Coordinators, but the case was narrowed through discovery, and class certification was only sought as to individuals who worked as Care Coordinators in New Mexico.

*Id.* Plaintiffs alleged that "Care Coordinators" and similar positions ("CCs") employed by Defendant in New Mexico were salaried workers who worked more than 40 hours per week without receiving overtime pay and that no exemption to the state and federal overtime laws were applicable. *Id.* Plaintiffs alleged that CCs performed care coordination services to Medicaid members pursuant to Defendant's contract with the State of New Mexico. *Id.*

Defendant contends that all of the Plaintiffs and Class Members were properly classified as exempt from overtime pay under the FLSA and NMMWA during the relevant time period, and denies all alleged wrongdoing, liability, and damages. Defendant further denies that Plaintiffs' or the Class Members' claims are appropriate for class or collective action treatment (except for settlement purposes).

Plaintiffs moved for conditional certification of the FLSA collective action on October 24, 2017. On October 5, 2018, the Court granted Plaintiffs' Motion for Conditional Certification. The initial collective action certification order included individuals who worked in one or more of several job positions. After conditional certification as a collective action under the FLSA, additional individuals joined the action. The Court set a Scheduling Order which provided for a period of Rule 23 class certification discovery. Despite pauses in the litigation for COVID-19, the Parties were diligent in conducting discovery.

On May 19, 2021, the Parties mediated the case with private mediator Dennis Clifford. Despite Mr. Clifford's experience in wage and hour cases, the parties did not reach a resolution of the matter.

At the conclusion of the class certification discovery period, on October 26, 2022, Defendant filed a Motion for Decertification of the FLSA collective action. At about the same time, Plaintiffs filed a Motion for Class Certification pursuant to Rule 23, as to CCs in New

Mexico only and did not seek class certification for any other positions, based on any other state law, or for individuals in states other than New Mexico, and a Motion for Summary Judgment alleging there was no factual dispute the CCs were nonexempt employees under the FLSA and NMMWA.

On January 31, 2024, the parties made a second attempt to resolve the case. Despite excellent work by Magistrate Judge Fouratt, the parties were not able to resolve the matter at that time.

On August 14, 2024, the Court granted Plaintiffs' Motion for Rule 23 Class Certification and partially granted Defendant's Motion for Decertification of the FLSA Collective Action. The Rule 23 class and remaining FLSA collective proceeded as to the state and federal claims of individuals who worked as CCs in New Mexico. *Id.* On August 28, 2024, the Court granted Plaintiffs' Motion for Summary Judgment and held that the CCs who worked in New Mexico were not exempt from federal or state overtime laws. Although a couple of issues remained on liability (willfulness under the FLSA, for example), the ruling narrowed the vast majority of issues for trial to damage-related issues, including the number of hours worked by Plaintiffs.

On February 12, 2025, Magistrate Khalsa held a status conference with the Parties. After the conference, the Parties continued to discuss the possibility of settlement and indicated to the Court on March 17, 2025, that both sides were amenable to a final attempt at settlement with Magistrate Khalsa. The Parties met with Magistrate Judge Khalsa at the courthouse on May 13, 2025, for the Rule 16 settlement conference. At the end of the day on May 13, the Parties had generally reached agreement to settle the case. Judge Khalsa directed the Parties to work on the language and other terms of the settlement and to report to her the next day as to whether agreement was reached on the remaining terms of settlement. The Parties reported that settlement

on those terms had been reached as well. The Court ordered the Parties to draft the formalized settlement agreement and set deadlines for filing the instant motion.

In the months prior to each mediation, the parties engaged in an informal exchange of information to calculate damages. *See* **Exhibit E,** Hedgpeth Declaration, ¶ 9. This included gathering and reviewing payroll records for the class members. *Id.* Defendant provided this information to Plaintiffs and both parties created damage models to be used at mediation. *Id.* During this time, the parties also engaged in extensive and detailed investigation of the claims. *Id.* Plaintiffs' counsel thoroughly analyzed the merits of the case and the value of the Class Members' claims. *Id.* This included, among other things, (1) multiple conferences with Plaintiffs and Opt-In Plaintiffs; (2) conferences with Defendant regarding the scope of production; (3) inspection and analysis of the documents and materials produced by Plaintiffs, Opt-in Plaintiffs, and Defendant; (4) analysis of the various legal positions taken and defenses raised by Defendant; (5) investigation and analysis of the guidelines used by CCs in the performance of their work; and (6) investigation and analysis of the regulations applicable to the performance of care coordination services in the State of New Mexico. *Id.* In advance of the final settlement conference with Judge Khalsa, Defendant provided additional payroll information, including information about hours worked by the current CCs after August 10, 2024, when Defendant reclassified the CCs as non-exempt from overtime and began tracking hours of work. *Id*.

### III.    SUMMARY OF THE PROPOSED CLASS SETTLEMENT

#### A. Description of the Settlement Terms.

The Settlement Agreement resolves the claims of 200 individuals who worked for Defendant in New Mexico as Care Coordinators and in other job positions identified by the Court

in its August 14, 2024, Order granting class certification under Rule 23. This group is defined in the Settlement Agreement:

> **"Class Members" or "Settlement Class" means Named Plaintiff and all current and former employees of Defendants who are members of the Rule 23 class certified by the Court in its Orders and defined as all Care Coordinators employed by Defendants in New Mexico from October 1, 2013 to August 10, 2024 who have not opted out of the Settlement by submitting an Opt-Out form, and thus represents all individuals who will become bound by the Released Claims portion of the Final Judgment if the Effective Date occurs. It also necessarily includes those plaintiffs who opted to join the case as party plaintiffs to prosecute the FLSA claims that overlap the NMMWA claims in the litigation, as all such plaintiffs are all members of the certified Rule 23 class.**

Settlement Agreement, ¶ 4. The six individuals who comprise the Supplemental Class Members are also covered by the settlement, assuming they do not elect to exclude themselves from the class by opting out before the Exclusion Deadline set by the Court. *Id.*, p.3 n.1.

The settlement provides that Defendant pay an amount not to exceed $16,000,000 (the "**Class Settlement Fund**") plus the employer's portion of applicable state and federal payroll taxes (FICA, FUTA, SUTA, etc.), in exchange for a release of all federal or state wage and hour claims prior to August 10, 2024. *See* Settlement Agreement, ¶ 23.

The settlement is not a coupon settlement. It represents actual cash payments being made to the Class Members, and the amounts are significant, with an average payment to Class Members of approximately $47,450 *after* the payment of attorneys' fees, administration fees, and service awards. Under the terms of the Settlement Agreement, each individual class member will receive a minimum payment of $1,500. *Id.* at ¶ 30. As currently calculated, the minimum payment only affects one Class Member, as all other Class Members' allocations exceed the $1,500 minimum. Fourteen percent of the Class Members will receive in excess of $100,000, primarily due to their tenure in the Care Coordinator position.

Plaintiffs' counsel intend to request a percentage of the Class Settlement Fund as fees for their service to the Class Members. Class Counsel also intends to request attorneys' fees not to exceed 40% of the Class Settlement Fund, plus costs of court and reasonable litigation expenses not to exceed $50,000.00. *Id.* at ¶ 32. This contingency fee percentage was previously included in the Class Certification notice distributed to Class Members when the case was certified as a Rule 23 class action. Consequently, the Class Members have been apprised of Class Counsel's typical contingency fee and elected to be represented by Class Counsel. The Class Settlement Fund also includes the costs of administration by a third party administrator, not to exceed $20,000.00. *Id.* at ¶ 27. Finally, Plaintiffs will request approval of a service payment of $25,000 for Named Plaintiff Deakin and $2,500 for each of the six individuals who sat for their deposition after providing responses to written discovery requests. *Id.* at ¶ 30. These amounts are also to be drawn from the Class Settlement Fund. *Id.*

Before final approval of the settlement, the Class Members will be sent a Notice outlining the terms of the settlement and will be provided instructions on how to object to the settlement if they are inclined to do so. *See* Ex. C. Supplemental Class Members will be informed of their right to exclude themselves from the settlement by means of a notice in the form attached as Exhibit D.

B.   **Allocation Methodology**

To ensure a fair and impartial allocation of the Class Settlement Fund, Class Counsel took into account each individual's (1) length of service in the applicable position(s), (2) rate of pay, and (3) specific attendance record. Ex. F, Braziel Dec., ¶3. The number of hours worked per week was set uniformly for all class members, thus making any variances in recovery primarily the result of variances in objectively recorded data. *Id.* For certain individuals who worked in

2013 and/or 2014 and pay data was not available, the average pay rate and average amount of paid time off was calculated and applied to determine the back wages for each individual with incomplete data. *Id.* The back wages were added to any applicable additional damages under the FLSA or the NMMWA to determine each individual's total damages; provided, however, that additional damages under the FLSA were only included for individuals who opted into the FLSA collective. *Id.*

Once the initial amounts were determined, their relative position to one another and to the overall total of damages was determined by dividing each individual's calculated damages by the total damages to establish their pro-rata percentage of the funds to be paid to the Class Members. *Id.* at ¶ 4. These pro-rata percentages were then multiplied against the amount to be distributed to the Class Members. *Id.* The amount to be distributed to the class was calculated as follows:

| | |
|---|---|
| Settlement fund | $16,000,000.00 |
| less attorneys' fees | $6,400,000.00 |
| less costs and litigation expenses | $50,000.00 |
| less administrator costs | $20,000.00 |
| Less service awards | |
| Deakin | $25,000.00 |
| 6 depos at $2500 each | $15,000.00 |
| less minimum payment (200 individuals at $1500 each) | $300,000.00 |
| | |
| **Net Settlement Fund for Pro Rata Share Calculation** | $9,190,000.00 |
| | |
| plus minimum payment | $300,000.00 |
| plus Deakin service payment | $25,000.00 |
| plus service payment for depos | $15,000.00 |
| | |
| **Total Paid Out To Class** | **$9,530,000.00** |
| | |
| Participants | 200 |
| Average | $47,450.00 |

Before the payment of service payments and minimum payments, the Class Members divide $9,190,000 on a pro-rata basis. *Id.* at ¶ 5. Once the minimum payments are added back to be distributed equally and service payments are added to specific high-involvement Class Members, the total to be distributed is $9,530,000. *Id.* This is the total Net Settlement Fund which amounts to the Settlement Class Fund minus any amounts not being paid to a settling Class Member. *Id.* The allocation eliminates as much subjectivity as possible with virtually all of the variances arising due to differences in longevity, rate of pay, and attendance. *Id.* The allocation does not favor the Named Plaintiff or any group of Class Members, but fairly compensates Class Members for their unpaid wages and service to the class. *Id.*

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.   Settlement of Class Action Litigation is Favored.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. Federal courts strongly favor and encourage settlements, particularly in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The traditional means for handling wage claims like those at issue here—individual litigation—would unduly tax the court system and would require a substantial expenditure of public and private resources by both sides. Given the value of the claims of the individual Class Members on the lower end of the spectrum, individual litigation would be impractical as they would have difficulty finding an attorney who understands state and federal wage and hour law

and who would take lower value claims, even if the individual wanted to spend the time and effort to litigate those claims. Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

Approval of a proposed settlement is a matter within the broad discretion of the district court. *In re Warner Comms. Sec. Litig.,* 798 F.2d 35, 37 (2d Cir. 1986); *In re Michael Milken*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993). "Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Market - Markers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*In re NASDAQ*"). "First, the court reviews the proposed terms of settlement and makes a preliminary determination of the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering See. Litig.,* 226 F.R.D. 186, 191 (S.D.N.Y. 2005) ("*In re Initial Pub. Offering*") (citing Manual for Complex Litigation, Fourth § 21.632 (204)). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ*, 176 F.R.D. at 102.

If the court preliminarily approves the settlement, it must direct preparation of the notice of the proposed settlement to be sent to class members and set the date of the final fairness hearing. *In re Initial Pub. Offering*, 226 F.R.D. at 192. Class members may then present arguments and evidence for and against the terms of the settlement before the Court decides whether the settlement is fair, reasonable and adequate. *Id.* (citing Manual for Complex Litigation, Fourth §§ 21.632-21.635 (2004)).

Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 3 B.J. Moore, Moore's Federal Practice ¶23.80[2.-1], at 23- 479 (2d ed. 1993); *In re Prudential Sec. Inc. Limited Partnership Lit.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (noting that the court can fully evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submission by proponents and potential opponents of the settlement and the reaction of the Class Members"). Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement … may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp.,* 323 F. Supp. 364, 372 (E.D. Pa 1970); s*ee also*, *In re Initial Public Offering*, 226 F.R.D. at 191 (fairness hearing affords class members "an opportunity to present their views of the proposed settlement").

Moreover, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. See, *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). As the court explained in *Lyons v. Marrud, Inc.,* No. 66 CIV. 415, 1972 WL 327 (S.D.N.Y. June 6, 1972), "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case." *Id*. at *2. Here, Plaintiff's Counsel has extensive experience in class action litigation

and is well-versed in the issues surrounding the underlying claims. *See* Ex. E, Hedgpeth Decl. ¶ 5. Specifically, Plaintiff's counsel has extensive experience acting as class counsel for salaried care coordinators and other care management employees. *Id.*

In this action, Defendant has agreed to pay a substantial sum to the Class given the considerable risks the Class Members face in continued litigation. Class Counsel calculate that, on average, **after** costs of administration, attorneys' fees, costs of court, reasonable litigation expenses, and requested service awards, the average payment before taxes is approximately $47,450. Class Counsel believe, based on their calculations and understanding of the legal and factual issues in the case that each individual's pro rata portion of the Net Settlement Fund[3] provides virtually all of an appropriately discounted recovery even *after* the payment of attorney's fees, litigation expenses, administration costs, and service payments. Hedgpeth Decl., ¶10. Plaintiffs' Counsel believes this is a fair, reasonable, and adequate result. *Id.*; *see also Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[4] In addition to discovery on damages, which could have resulted in hours estimates far lower than had been reported by the

---

[3] That is, the Class Settlement Fund listed in the Settlement Agreement minus costs of third-party administration, service awards, and attorney's fees, costs, and litigation expenses.

[4] *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 5.35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D.Ga.1993) (approving settlement amounting to approximately 12.7% to 15.3% of the estimated minimum possible recovery); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

active participants in the lawsuit, Defendant had made clear that it intended to challenge certain damage calculation methodologies on which Plaintiffs were relying, including, but not limited to, the addition of treble damages. Hedgpeth Decl., ¶ 11. Defendant also planned to challenge Plaintiffs' contention that violations that occur as part of a continuing course of conduct are not subject to any statute of limitations under the NMMWA. *Id.* Both of these challenges, neither of which have been resolved by the courts of New Mexico, posed credible threats to the damages Plaintiffs could prove at trial. Moreover, Defendant made clear that, in addition to raising the above issues with the New Mexico Supreme Court, they intended to move for decertification of the class and appeal the summary judgment decision. Even though Plaintiffs expected to prevail on appeal, resolving the case likely saved several more years of litigation.

In addition, the distribution of the Net Settlement Fund is fair, as all Class Members will share in the Funds on a *pro rata* basis based on the amount of time they worked in an eligible position, their attendance history, and their rates of pay. Settlement Agreement, ¶ 27. This fair result supports preliminary approval.

B.     **The Court Should Preliminarily Approve the Award of Attorneys' Fees**.

Under the Settlement Agreement, Class Counsel may request up to 40% of the common fund as attorneys' fees. *See* Settlement Agreement, ¶ 32. Plaintiffs' counsel will file a request for attorneys' fees following the close of the notice period and prior to the final approval hearing. However, for the purpose of preliminary approval, Plaintiffs note that the favored approach for determining reasonable attorneys' fees in the Tenth Circuit is to use the percentage-of-the-fund method. *See Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015) ("While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically a percentage

of the fund." (citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995) and *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994)). In approving a fee award in a similar case involving individuals performing care coordination duties for a managed care company, Judge Gonzalez noted that the percentage of fund method "is reasonable for this common fund case and consistent with the practice of district courts in the 10th Circuit." *Candelaria v. Health Care Serv. Corp.*, 2020 WL 6875828, at *3 (D.N.M. Nov. 4, 2020) (collecting cases). Moreover, as will be discussed further in Plaintiffs' counsel's motion for fees, the percentage being requested is consistent with contingent fee awards in the Tenth Circuit. *See id.* (citing cases with attorneys' fees ranging from 33% to 58%). Finally, the anticipated fee request is consistent not only with the representation agreement between Class Counsel and the Named Plaintiff, but with the Class Notice, which notified all Class Members that Class Counsel would request a fee not to exceed 40%. *See* Hedgpeth Decl., ¶ 12.

### C. The Court Should Preliminarily Approve the Service Awards to Those Who Spent Substantial Time and Energy to Assist Counsel and Present a Strong Case on Behalf of Plaintiffs.

Named Plaintiff Maureen Deakin seeks preliminary approval of a Service Award of $25,000 for her more than eight years of service to the Settlement Class. Plaintiffs also seek preliminary approval of a service payment of $2,500 for each of the six individuals in the New Mexico class who engaged in responding to written discovery and who were deposed. These Service Award are in addition to the payments these individuals will receive as their share of the Settlement Class Fund. *Id.*

Named plaintiffs in class actions play a crucial role in helping to bring claims that might otherwise not be pursued. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate

in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Service Awards are well-suited to employment litigation because the Named Plaintiff assumes the risk that future employers may look unfavorably upon them if they have filed suit against former employers. *Beesley v. Int'l Paper Co.*, 2014 WL 375432, *4 (S.D. Ill. Jan. 31, 2014).

Named Plaintiff took substantial actions to protect the interests of potential class and collective action members, including reviewing the complaint, conferring with Plaintiff's Counsel, giving declarations, providing data and information about the claims, responding for formal discovery, including sitting for her own deposition, and participating in and preparing for three different mediations. Those actions resulted in a substantial benefit to 200 total Class Members, who will receive checks in amounts ranging from approximately $1,500 to approximately $212,000, with an average settlement payment of approximately $47,450. *See*, Courts in this Circuit and others have approved incentive awards for similar activities. *See Briggs v. PNC Fin. Services Grp., Inc.,* 2016 WL 7018566, * 3 (N.D. Ill. Nov. 29, 2016) (approving $12,500 service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo v. Noodles & Company,* 2016 WL 7451623 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards).[5]

---

[5] *See also Beatty v. Capital One Fin. Corp.,* No. 1:12-cv-434 (N.D. Ill. Nov. 19, 2012) (orders (ECF Nos. 70, 75) approving $15,000 in service awards to two named plaintiffs in FLSA settlement); *Reyes v. Altamerea Grp., LLC,* 2011 WL 4599822, *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards in the amount of $15,000 each for three class representatives in wage action); *Zolkos v. Scriptfleet, Inc.,* 2015 WL 4275540, *3 (N.D. Ill. July 13, 2015) (awarding $10,000 each as service awards to six domed plaintiffs in wage action).

Named Plaintiff also undertook substantial direct and indirect risk. In agreeing to file this class action suit in her name, Named Plaintiff undertook the significant risk that, "should the suit fail, [she could] find [herself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid v. DirectSAT USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2011) (internal citations omitted). Named Plaintiff further risked retaliation from future employers for the benefit of all Class Members. *See Beesley,* 2014 WL 375432, at *4; *Edelen v. Am. Residential Servs., LLC*, 2013 WL 3816986 (D. Md. July 22, 2013) ("although there is no indication that [the named plaintiff] faces any specific challenges in his current or future job prospects as a result of his participation in this lawsuit, there clearly is a risk that he could"). "The incentive reward is designed to compensate [Named Plaintiff] for bearing these risks." *Espenscheid,* 688 F.3d at 877.

### D. Preliminary Approval of the Settlement is Within the Court's Discretion and is Warranted Here.

"It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential Sec. Inc. Limited Partnership Lit.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). At the preliminary approval phase of the class action settlement process, the Court's function is to ascertain whether the proposed settlement is within the range of possible approval and whether it is thus reasonable to notify the class members of the proposed settlement and proceed with a fairness hearing. *Id*. Where, as here, "the proposed settlement[] appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In Re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citation omitted).

Preliminary approval of the Settlement is warranted in this case. Plaintiffs and Defendant are intimately familiar with the claims and defenses in this action. The Settlement Agreement was reached after extensive, arms-length negotiations between the parties, who were represented by competent counsel and overseen by Magistrate Khalsa whose credentials are well-known to this Court. Ex. E, Hedgpeth Decl., ¶ 13. If finally approved, the Settlement Agreement will conclude this litigation after eight years on the docket (including at least a year and a half during the COVID-19 period). Plaintiffs and their counsel believe that, given the uncertainties of litigation, the probability of extensive delays in achieving final resolution through litigation and appeal, the defenses asserted, and the substantial benefits provided to Class Members the Settlement Agreement, this Settlement is in the best interests of the Class Members. Ex. E, Hedgpeth Decl., ¶ 14.

Because this Settlement involves a Rule 23 class action, it will not be final until (1) the Notices disclosing Class Members' right to object[6] to the Settlement are mailed to Class Members and the Notice Procedures are fulfilled; (2) the Court holds a Final Fairness Hearing to decide whether to approve the Settlement Agreements as fair, adequate and reasonable in light of the parties' submissions and to consider any objections from Class Members; (3) the Court concludes that the Settlement is fair, adequate and reasonable; and (4) the Settlement becomes "final" as defined in the Settlement Agreement. At the Final Fairness Hearing, after Notice and briefing by the parties and any objectors, the Court has the discretion to finally approve the Settlement if the Court finds it to be fair, reasonable and adequate for the Class Members.

## VI.     **CONCLUSION AND RELIEF REQUESTED**

---

[6] Or, for the Supplemental Class Members, to be provided the opportunity to exclude themselves from the class and/or to object to the terms of settlement.

For the reasons stated above, Plaintiffs respectfully requests the Court to: (1) grant preliminary approval of the proposed Settlement Agreement; (2) approve the proposed Settlement Notice and directs implementation of the notice program; (3) appoint Analytics Consulting, LLC. as the Settlement Administrator; (4) appoint Travis Hedgpeth of the Hedgpeth Law Firm, Derek Braziel of Braziel Law Offices, P.C. and Jack Siegel of Siegel Law Group PLLC as Class Counsel, (5) set exclusion deadline for the Supplemental Class Members; (6) set the objection deadline for Class Members; and, (7) set the date for the Final Approval Hearing on a date no less than one hundred (100) days after the filing of this Motion.

Respectfully submitted,

*/s/ Travis M. Hedgpeth*

TRAVIS M. HEDGPETH
Texas Bar No. 24074386
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
P: (281) 572-0727
travis@hedgpethlaw.com

J. DEREK BRAZIEL
jdbraziel@l-b-law.com
Texas Bar No. 24070621
Braziel Law Offices, P.C.
5314 Longview
Dallas, TX 75206
P: (214) 749-1400

JACK SIEGEL
Texas Bar No. 24070621
SIEGEL LAW GROUP PLLC
5706 E. Mockingbird Lane, Suite 115
Dallas, Texas 75206
Phone: (214) 790-4454
jack@siegellawgroup.biz

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this document on August 7, 2025, and that notice of this filing will be distributed to all counsel of record through the District's ECF system.

*/s/ Travis M. Hedgpeth*
Travis M. Hedgpeth
